IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE,      Plaintiff, | : <br> : <br> : |
| v. | :    Civil No. 5:20-cv-00377-JMG <br> : |
| MORAVIAN COLLEGE, *et al.*,      Defendants. | : <br> : |

### MEMORANDUM OPINION

**GALLAGHER, J.**                                                                            **March 5, 2021**

Plaintiff Jane Doe, a college freshman, contends that she was sexually assaulted on her college campus by fellow students and their guest. She brings this action against her alleged attackers, for the assault, and against the college, for not protecting her. *See* ECF No. 4 (Amended Complaint). Before me is a motion to dismiss brought by defendant college who argues that the allegations are insufficient to support claims of Title IX violations, intentional infliction of emotional distress, and negligence. *See* ECF No. 8. For the reasons that follow, the defendant's motion is granted in part and denied in part.

**I.**     **FACTUAL ALLEGATIONS**[1]

Plaintiff Jane Doe began the night of August 24, 2017, celebrating the conclusion of the Moravian College cheerleading team's preseason. ECF No. 4 ¶ 12. The team, including Doe, ate dinner at a nearby restaurant and then went to the "cheerleading house" on campus. *Id.* ¶ 19. At the cheerleading house, Doe drank some alcoholic beverages. *Id.* ¶ 20. Around 11:40 p.m., Doe and some of the other cheerleaders left the cheerleading house to attend a party at the "football

---

[1] The following summary is based on the factual allegations contained in the amended complaint. For purposes of deciding this motion, the allegations are presumed to be true and are considered in the light most favorable to the plaintiff.

house." *Id.* ¶ 21. When she arrived at the football house, Doe was feeling dizzy and sick. *Id.* ¶ 23. She was provided with a sealed bottle of water that she drank and had refilled five or six times. *Id.* To her knowledge, she did not drink any alcohol at this party. *Id.* ¶ 22. Two of the individual defendants—one a student at Moravian College and the other a guest—approached Doe and offered to walk her back to her dorm room. *Id.* ¶¶ 9, 11, 24.

During the walk back to her dorm, Doe indicated that she needed to use a bathroom. *Id.* ¶ 25. The two individual defendants offered one of their dorm rooms, and Doe agreed. *Id.* She believes that the two individual defendants then communicated with the third individual defendant to inform him that Doe was going to the dorm room. *Id.* ¶ 26. They also "suggested, inferred, or alluded to their intent to have 'three some'" with Doe and invited him to participate. *Id.*

Once in the dorm room, all three individual defendants raped Doe and videotaped the assault. *Id.* ¶¶ 27–31, 33. While she does not remember "the full encounter," Doe does remember moments from it, including the moving defendant "pulling her hair, hitting her and using excessive force." *Id.* ¶ 29. Doe never consented to the sexual assault, and she believes that she lacked the capacity to consent, either due to intoxication or "unknown ingestion of drugs." *Id.* ¶ 31.

Immediately following the assault, Doe remembers going to a nearby bathroom to cry and wanting to leave. *Id.* ¶ 32. When she exited the bathroom, one of the individual defendants was waiting for her in the hallway to tell her that he was going to walk her back to her dorm. *Id.* During the walk back to her room, Doe believes that she had a conversation with him about whether there was any video recording of the assault. *Id.* ¶ 36. She was assured that there was no such recording. *Id.* However, Doe believes that the individual defendants did in fact record

portions of the rape. *Id.* ¶ 33. They then electronically sent these videos to other students at Moravian College, without Doe's permission, and texted with these other students that night and into the next day about the assault. *Id.* ¶ 34, 37, 39.

The next morning Doe woke up and started to remember portions of the assault from the night before. *Id.* ¶ 41. She then reported the rape to her Resident Advisor and campus security. *Id.* ¶ 42. Subsequently, both the Bethlehem Police Department and Moravian College began investigating the incident. *Id.* ¶ 44. For the duration of Moravian College's investigation, the individual defendants were directed not to contact Doe. *Id.* ¶ 47.

Despite this directive, the individual defendants interacted with Doe on multiple occasions. *Id.* ¶¶ 47–49, 51, 95–100. Although Doe informed the Title IX director, Lea Breisch, about these violations, the individual defendants were never disciplined. *See id.* ¶¶ 50, 52. To the contrary, Breisch advised that the defendants had not violated the no contact order and that Doe should be "more courteous" to them in the future. *See id.* In fact, on one occasion when an individual defendant sat behind Doe at a basketball game and laughed at her,[2] Breisch and the Coordinator of Student Affairs, Greg Meyer, concluded that it was Doe who had violated the no contact order and issued a formal violation to her personal file. *Id.* ¶¶ 95–101.[3]

As the Title IX investigation was nearing a conclusion, Breisch and Meyer met with Doe regarding the upcoming hearing. *Id.* ¶ 53. At this meeting, Breisch and Meyer "strongly discourage[ed]" Doe, advising her that the odds for the defendants' expulsion were unlikely. *Id.*

---

[2] Doe's father, who was with her, asked him to move his seat, but the defendant refused. *Id.* ¶ 98. Following the game, there was a verbal confrontation between Doe's father and the defendant. *Id.* ¶ 100.

[3] When Doe decided to withdraw from Moravian, she requested that this violation be sealed or expunged from her record. *Id.* ¶ 102. Meyer—allegedly with the intent to harm Doe—refused the request. *Id.* As a result, Doe had to later explain to an admissions counselor the circumstances of her assault. *Id.* ¶ 103. Then, more than a year later, Meyer reached out to Doe and informed her she was eligible to have the violation sealed or expunged. *Id.* ¶ 105. But to do so, she would have had to admit to the violation, express remorse, and relive the circumstances of the assault. *Id.*

¶ 54. Based on these discussions, Doe became "disillusioned with the process" and decided to withdraw her Title IX complaint and transfer to a different college. *Id.* ¶ 55. No disciplinary action was ever taken against the individual defendants.

## II.    STANDARD OF REVIEW

A complaint may be dismissed for failing to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain factual allegations that sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Facial plausibility means that when accepting the complaint's factual allegations as true and in the light most favorable to the plaintiff, a "reasonable inference" may be drawn that "the defendant is liable for the misconduct alleged." *See id.*

At the motion to dismiss stage, the issue is not whether the plaintiff will prevail in the end but whether the complaint rises to the level that is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). The Third Circuit has set forth a three-step framework for determining the sufficiency of a complaint. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court should take "note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678–79). Second, the court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678–79); *see also Iqbal* 556 U.S. at 678 (explaining that courts need not accept as true legal conclusions or conclusory statements unsupported by the facts). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

entitlement for relief." *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 678–79).[4] A court must "draw on its judicial experience and common sense" to make this context-specific determination. *Iqbal*, 556 U.S. at 686.

### III. DISCUSSION

Moravian College contends that the amended complaint lacks sufficient factual allegations to sustain *any* claim against it. *See* ECF No. 8. After careful review, the Court concludes that Doe's Title IX and intentional infliction of emotional distress claims may proceed, but that her negligence claim will be dismissed without prejudice. As such, Moravian College's motion will be granted in part and denied in part.

#### A. Title IX Violations

Moravian first addresses the claims that it violated Title IX in relation to the assault on Doe. ECF No. 8-2, at 8–9.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §1681(a). Pursuant to Title IX, a funding recipient may be liable for a student sexually harassing another student where the recipient is "deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Deliberate indifference occurs when "the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648. If the recipient is not the

---

[4] When deciding a motion to dismiss, courts generally can only consider the allegations contained in the complaint, any attached exhibits, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

one who directly engages in the harassment, then it is not liable for damages "unless its deliberate indifference 'subject[s]' its students to harassment." *Id.* at 644 (alteration in original). In other words, "the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Id.* at 645 (alteration in original).

Doe presents three theories of Title IX liability against Moravian College: a general deliberate indifference claim; a deliberate indifference claim based on its post-assault actions; and a deliberate indifference claim based on its pre-assault actions. *See* ECF No. 4, ¶¶ 56–91. Moravian College alleges that Doe has failed "to identify any factual basis for her assertion of liability under Title IX." ECF No. 8-2, at 9. However, Moravian College does not engage in any meaningful analysis or discussion of the facts contained throughout the amended complaint. It relies almost entirely on the conclusory statement that Doe "fail[s] to properly assert a claim under Title IX," *see* ECF No. 8-2, at 9, completely ignoring the myriad of relevant allegations that Doe has pleaded. For example, Doe alleges that despite knowing about the details of the assault and subsequent sharing of video from that night, Moravian College never disciplined the individual defendants, suggested she be "more considerate" of her assailants, and discouraged her from proceeding with the Title IX hearing. *See* ECF No. 4, ¶¶ 44–54.

The Court reminds defense counsel that it is the defendant who "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005); *see also McCowan v. City of Phila.*, No. 19-cv-3326, 2021 WL 84013, at *22 (E.D. Pa. Jan. 11, 2021) (finding defendants did not carry their burden, as they only stated in "a conclusory fashion," without discussing the factual allegations in the complaint, that plaintiffs had failed to

state a claim). Moravian College has not met its burden here, and the Court, for that reason, will deny the motion to dismiss the Title IX claims.[5]

### B. Intentional Infliction of Emotional Distress

Moravian College next challenges the sufficiency of the intentional infliction of emotional distress claim against it. ECF No. 8-2, 10–11.

To state a claim for intentional infliction of emotional distress under Pennsylvania law, the plaintiff must allege facts that establish that (1) the defendant's conduct was "extreme and outrageous," (2) it was "intentional or reckless," (3) it caused emotional distress, and (4) the emotional distress was severe.[6] *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc); *see also Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) ("One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." (quoting RESTATEMENT (SECOND) OF TORTS § 46(1))). Conduct rises to the "extreme and outrageous" level if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. 1987)); *see also Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d).

---

[5] The general Title IX claim will be dismissed as it appears to be duplicative of the other theories. Moreover, Doe's brief only addresses the pre-assault and post-assault claims.

[6] Pennsylvania courts also require a showing of "some type of resulting physical harm due to the defendant's outrageous conduct." *See Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. 2005)) (quotation marks omitted).

"Intentional" conduct involves "'knowledge on the part of the actor that *severe emotional distress is substantially certain to be produced by his conduct.*'" *Hoffman v. Mem'l Osteopathic Hosp.*, 492 A.2d 1382, 1386 (Pa. Super. 1985) (emphasis in original) (quoting *Forster v. Manchester*, 189 A.2d 147, 151 (Pa. 1963)); *see also Bryan v. Erie Cnty. Off. of Child. & Youth*, 861 F. Supp. 2d 553, 586 (W.D. Pa. 2012) (quoting *Hoffman*, 492 A.2d at 1386). "Reckless" conduct, on the other hand, is when the actor knows or has reason to know of "facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." RESTATEMENT (SECOND) OF TORTS § 500; *see also Jordan v. City of Phila.*, 66 F. Supp. 2d 638 (E.D. Pa. 1999) (citing to RESTATEMENT (SECOND) OF TORTS § 500).

At this preliminary stage, courts consider the specific factual allegations to determine whether an intentional infliction of emotional distress claim may proceed based on a school's response to sexual harassment or assault. *Compare M.S. ex rel. N.S. v. Twin Valley Sch. Dist.*, No. 15-cv-5733, 2016 WL 11698061, at *8 (E.D. Pa. June 14, 2016) (granting motion to dismiss IIED claim against school district employee for failing to investigate claims of a student's sexual misconduct because the employee's alleged inaction was "negligent" not "extreme or outrageous" nor was it done with the intent to cause the plaintiff to continue to suffer harm), *with MGJ v. Sch. Dist. of Phila.*, No. 17-cv-318, 2017 WL 2277276, at *16 (E.D. Pa. May 25, 2017) (denying motion to dismiss IIED claim against organization that contracted with school district to provide support staff because it allegedly knew about plaintiff's "disabilities rendering her more susceptible to elopement and [it's] deliberate attempts to conceal known acts of sexually

inappropriate behavior—by the assailant and other students—despite being responsible for providing therapeutic support services to [plaintiff]").

Here, assuming the factual allegations in the light most favorable to Doe, the Court finds that Moravian College's alleged conduct rises to the level of intentional infliction of emotional distress. The factual allegations contained in the amended complaint are disconcerting to say the least. After learning that two of its students raped another student, and electronically sent videos of the assault to others, Moravian College ultimately took no disciplinary action. During the subsequent Title IX investigation, the individual defendants repeatedly violated the no contact order, without any consequence. Moravian College responded to the violations by instructing Doe to be more considerate of her attackers. And on one occasion, after Doe reported yet another violation, Moravian College reprimanded her, issuing a formal violation in her file that the school refused to seal or expunge. Finally, toward the end of the Title IX investigation, Moravian College discouraged Doe from proceeding with the process. She ultimately withdrew and transferred to a different college. Based on these allegations, the Court concludes that Doe has sufficiently alleged outrageous conduct, on the part of Moravian College, that intentionally or recklessly caused serious emotional distress.

### C. Negligence

Finally, Moravian College argues that the negligence claim against it must be dismissed.

The elements of negligence, under Pennsylvania law, are that (1) the defendant owed the plaintiff a duty of care, (2) that duty was breached, (3) the breach resulted in the plaintiff's injuries, and (4) the plaintiff suffered an actual loss or damages. *Collins v. Phila. Suburban Development Corp.*, 179 A.3d 69, 73 (Pa. Super. 2018) (citing to *Merlini ex rel. Merlini v. Gallitzin Water Authority*, 980 A.2d 502, 506 (Pa. 2009)). A landlord generally owes no duty to

9

protect its tenants from the criminal conduct of other parties. *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984). However, an exception to this rule is recognized where the landlord establishes a program of security, the tenants reasonably rely upon it, and the landlord negligently carries out the program. *Id.* Importantly, though, "a tenant may not expect more than is offered." *Id.*

Here, the amended complaint fails to identify any program of security,[7] let alone one that was negligently operated. Rather, Doe, in her response in opposition to the motion to dismiss, invites the Court to "assume that Moravian in fact had established a program of security in effect on campus when and where [she] was raped." ECF No. 10-7, at 11. Such a conclusory statement is not sufficient to adequately state a claim for negligence based on inadequate security.

Moreover, Doe's reliance on the business invitee theory to hold Moravian College liable for negligence is unavailing. Doe contends that Moravian College, as a landowner who holds the property open to the public for business purposes, owes a duty to Doe for failing to exercise reasonable care in either discovering that criminal acts are likely to be done or failing to give a warning or otherwise protect her. ECF No. 10-17, 12–14 (citing to section 344 of the RESTATEMENT (SECOND) OF TORTS). But, in *Feld v. Merriam*, the Pennsylvania Supreme Court rejected this theory in the context of criminal conduct in apartment buildings. *See* 485 A.2d at 745–46. The court reasoned that even in the common areas of an apartment complex, the general public is not "expected or invited to gather there for other purposes than to visit tenants." *Id.* at 745. It is not open to the public such that the landowner "profits from the very public it invites [and therefore] must bear what losses that public may create." *Id.* As such, the Pennsylvania

---

[7] "A program of security is not the usual and normal precautions that a reasonable home owner would employ to protect his property. It is, as in the case before us, an extra precaution, such as personnel specifically charged to patrol and protect the premises." *Feld*, 485 A.2d at 747.

Supreme Court declined to extend section 344 to apply in this context, and Doe cannot use it to hold Moravian College liable here. *See id.*

## IV. CONCLUSION

For the foregoing reasons, Moravian College's motion to dismiss is **GRANTED in part** and **DENIED in part**. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge