## IN THE UNITED DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | NO.: 5:20-CV-00377-JDW |
| | ) | |
| MORAVIAN COLLEGE, JOHN DOE 1, | ) | |
| JOHN DOE 2 and JOHN DOE 3 | ) | CIVIL ACTION |
| *Individually and Jointly,* | ) | |
| | ) | |
| Defendants | ) | JURY TRIAL DEMANDED |

### SECOND AMENDED COMPLAINT

Plaintiff, Jane Doe (hereinafter referred to as "Plaintiff"), by and through her attorneys, John R. Vivian, Jr., Esquire and Adam D. Meshkov, Esquire, and Eleanor Breslin, Esquire, brings the following Second Amended Complaint against Defendant Moravian College (hereinafter "Moravian"), Defendant John Doe 1 (hereinafter "John Doe 1"), Defendant John Doe 2 (hereinafter "John Doe 2"), and Defendant John Doe 3 (hereinafter "John Doe 3") and respectfully avers as follows:

1.      Plaintiff Jane Doe, is an adult individual residing in the Commonwealth of Pennsylvania, and at the time of the incident complaint of herein was a matriculated student at Defendant Moravian on August 25, 2017 and was residing on the campus of Defendant Moravian.  Plaintiff is using the Jane Doe pseudonym because of the sensitive nature of the incidents complained of herein and the embarrassment and shame caused by the incidents described hereinafter in this Complaint.

2.      Defendant Moravian, is upon information and belief a validly existing organization or institution believed to be a non-profit corporation of an educational nature, with its principle place of business at 1200 Main Street, City of Bethlehem, County of Northampton,

Pennsylvania 18018 and at all times material hereto said Defendant Moravian was providing resident education to the Plaintiff including living quarters under their control at their main campus located at the aforementioned address.

3.      Defendant John Doe 1 is an adult individual residing at 425 Pierce Street, Bethlehem, County of Northampton, Commonwealth of Pennsylvania, and is also believed to maintain a residence on the campus of Defendant Moravian.

4.      Defendant John Doe 2 is an adult individual residing at 625 Broadway, Bethlehem, County of Northampton, Commonwealth of Pennsylvania, and is also believed to maintain a residence on the campus of Defendant Moravian.

5.      Defendant John Doe 3 is an adult individual residing at 3237 East Blvd., Bethlehem, County of Northampton, Commonwealth of Pennsylvania, and is believed at all times relevant to be a student matriculated at Bloomsburg University and maintaining residence at Bloomsburg University.  At all times mentioned herein, the Defendant John Doe 3 was a visitor present on the campus of Defendant Moravian during the incidents complained of hereinafter.

## JURISDICTION

6.      The United State District Court for the Eastern District of Pennsylvania has Jurisdiction over this matter as Plaintiff's claims arise under Title IX of the Civil Rights Act of 1964, 20 U.S.C., §1681 - 1688 et seq., as amended by the Civil Rights Act of 1972 and 42 U.S.C., §1983.  The matter in controversy exceeds the sum or value of One Hundred and Fifty Thousand ($150,000.00) Dollars exclusive of interest and costs as to each and every Cause of Action and Count as set forth hereinafter.

<u>**VENUE**</u>

7.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to PA. R.C.P., No. 1006(a)(1)(2)(b) and (c) (1).

<u>**FACTUAL BACKGROUND ALLEGATIONS COMMON TO ALL COUNTS**</u>

8.      Plaintiff matriculated and began her education at Defendant Moravian in August 2017 and completed her first year at Defendant Moravian ending in May 2018, during which time in addition to completing her classwork she was a member of the Moravian Cheerleading Squad.  Plaintiff transferred following completion of her first year to another Pennsylvania college where she is still matriculated.

9.      Defendant John Doe 1 is believed to have been a Defendant Moravian student enrolled and in attendance at Defendant Moravian during the year 2017-2018, and is believed to still be a student in attendance at Defendant Moravian and a member of the Football Team in addition to pursuing his studies.

10.      Defendant John Doe 2 is believed to have been a Defendant Moravian student enrolled and in attendance at Defendant Moravian during the year 2017-2018, and is believed to still be a student in attendance at Defendant Moravian and a member of the Track Team in addition to pursuing his studies.

11.      Defendant John Doe 3 is believed to have been a student and matriculated at Bloomsburg University with a permanent residence in the City of Bethlehem, and at all times mentioned herein was a visitor on the campus of Defendant Moravian at the time of the incident complained of hereinafter.

12.      On or about August 24, 2017, Plaintiff attended a celebration following the end of pre-season cheerleading.

13.     Importantly, on August 24, 2017, the only students officially residing at the campus of Defendant Moravian were student athletes, including all members of the football team and cheerleaders, including Plaintiff.

14.     Defendant Moravian either was or should have been aware that the vast majority of campus related sexual assaults and rapes occur during the first weeks of the fall semester.

15.     It is believed and therefore averred that Defendant Moravian, while aware of these sexual assault statistics failed to take any preventative measures towards educating the student athletes then residing on campus, including of the known increased statistical risks of her experiencing a sexual assault.

16.     Similarly, Defendant Moravian, while aware of these statistics, failed to provide any education or instruction to the members of the athlete teams including the football team and the individual Defendants in this matter concerning inappropriate and/or criminal sexual misconduct, as is required under Title IX.

17.     Similarly, Defendant Moravian, while aware of these statistics, failed to provide increased security or to instruct its then existing security personnel to be on alert towards preventing sexual assault and rape during this critical period of time.

18.     At the time, date and place aforesaid the cheerleaders from Defendant Moravian went to a restaurant known as On the Border for dinner, where she ate and did not consume any alcoholic beverages.

19.     Following dinner at On the Border, the Plaintiff went to the cheerleading house arriving at approximately 7:00 p.m.; known as the "Cheerleading House" located in the Hillside Complex 4 on the Campus of Defendant Moravian and believed to be owned by the Defendant Moravian.

20.     While at the Cheerleading House, the Plaintiff (who was underage) consumed alcoholic beverages consisting of Malibu Coconut Rum and at least one beer.  This alcohol is believed to have been provided by the cheerleaders who were over the age of 21 to the Plaintiff and other minors.

21.     At approximately 11:40 p.m., on August 24, 2017, the cheerleaders that remained at the party decided to walk to a residence known as the "Football House", a residence located at 127 West Laurel Street, City of Bethlehem, County of Northampton, Commonwealth of Pennsylvania.  Plaintiff believes and therefore avers that 127 West Laurel Street is located on the campus of Defendant Moravian and is in fact owned by Defendant Moravian.

22.     Upon arrival at the Football House there were approximately 20 or more males in the house and an unauthorized party was in process.  To the best of Plaintiff's belief, she did not consume any alcoholic beverages while at the Football House.

23.     After arriving at the party the Plaintiff felt dizzy and sick and at that time she was provided with a sealed bottle of water, which Plaintiff consumed.  Following the consumption of that water, the empty water bottle was refilled with what the Plaintiff believed to be water and she consumed five to six of the refilled water bottles.  Following the consumption of the water the Plaintiff felt dizzy and was not feeling well she believed from drinking too much water at the party.

24.     While at the Football House party the Plaintiff was approached by Defendant John Doe 3 and various conversations ensued and approximately ten to fifteen minutes after the other cheerleaders had vacated the party the Plaintiff believes that she informed Defendant John Doe 3 and Defendant John Doe 2 that she was going to go back to her dorm room whereupon Defendants John Doe 3 and John Doe 2 began to walk her back to her dorm room.

25.     During the walk from the football house to Plaintiff's dorm, the Plaintiff believes that she had to go to the bathroom and that she was informed by Defendant John Doe 3 that Defendant John Doe 2's dorm was on the way and that they could stop there to use the bathroom. Plaintiff believes that she agreed to that plan.

26.     At some time during the walk from the football house to Plaintiff's dorm, the Plaintiff believes and therefore avers that the Defendants John Doe 3 or John Doe 2 either placed a phone call, sent a text message and/or other electronic communication to Defendant John Doe 1 alerting him to the fact Defendant John Doe 3 and Defendant John Doe 2 were taking the Plaintiff Jane Doe to John Doe 2's dorm room.  It is believed and therefore averred that either one or both of these two Defendants suggested, inferred, or alluded to their intent to have a "three some" with Plaintiff Jane Doe and invited Defendant John Doe 1 to participate in this planned endeavor.

27.     Upon arriving at the Austin-Spangenberg House on Campus, the location of Defendant John Doe 2's residence on the Defendant Moravian's Campus referred to as a section called "Spang-F"; the Defendants John Doe 2 and John Doe 3 showed the Plaintiff the upstairs bathroom, which Plaintiff recalls using.

28.     After leaving the bathroom the Plaintiff 's next memory is being in a bedroom (believed to be Defendant John Doe 2's room in Spang-F) and at that point remembers the Defendants removing her clothing and all three Defendants taking turns orally and vaginally penetrating the Plaintiff Jane Doe.

29.     Plaintiff does not remember the full encounter and is unsure whether she blacked out during these assaults.  Plaintiff does remember moments of the various encounters; and in specific, Defendant John Doe 1 pulling her hair, hitting her and using excessive force while

instructing her to perform oral sex on Defendant John Doe 2.  Plaintiff remembers language being used toward her such as bitch and other derogatory terms on a repeated basis and recalls the bedroom door occasionally opening and closing and lights flashing.

30.     Plaintiff was unaware whether or not the flashings were a flashlight or some sort of video or camera device.

31.     Plaintiff believes and therefore avers that she never consented to the sexual assaults, and that as a result of either intoxication or unknown ingestion of drugs that she lacked the capacity to consent to these sexual assaults.

32.     Following the sexual incidents occurring in Defendant John Doe 2's room, the next memory of the incident of the Plaintiff was somehow putting her shoes back on, taking her purse and going to the bathroom located across from Defendant John Doe 2's room.  Plaintiff recalls crying in the bathroom and wanting to leave Defendant John Doe 2's room and when she left the bathroom Defendant John Doe 3 was waiting in the hallway and informed her he was taking her back to her dormitory building.

33.     Plaintiff believes and therefore avers that during the heretofore described non-consensual sexual assaults, that the Defendants John Doe 1, John Doe 2, and John Doe 3 either individually or jointly, filmed on video some of the various sexual acts being committed against the Plaintiff Jane Doe without her permission and/or consent.

34.     Plaintiff believes and therefore avers that the Defendants John Doe 1, John Doe 2, and John Doe 3 further without Plaintiff Jane Doe's permission published these various video or "snaps" to various other students at Defendant Moravian, their friends and acquaintances by electronic means also without her express consent and/or permission.

35.     Plaintiff believes and therefore avers that a policy prohibiting the dissemination of such visual images by electronic means or otherwise existed under Defendant Moravian's established policies, and, in fact, was/is illegal under Pennsylvania Law.

36.     Plaintiff believes and therefore avers that at some point during the walk when Defendant John Doe 3 was accompanying Plaintiff Jane Doe back to her dormitory building that the subject of videotaping of the sexual assault was discussed between Plaintiff Jane Doe and Defendant John Doe 3.  Plaintiff Jane Doe has no memory of that particular conversation, but it is believed and averred that the Defendant John Doe 3 informed the Plaintiff in no uncertain terms that there were no video tapes of what had occurred in Defendant John Doe 2's dormitory room, according to a statement given by Defendant John Doe 3 to Defendant Moravian's Title IX investigators.

37.     Plaintiff believes and therefore avers that beginning after the sexual assaults and continuing into the next day that the Defendants John Doe 1, John Doe 2, and John Doe 3 were engaging in text based discussions with Defendant Moravian students and others who had received the images electronically sent by the Defendants John Doe 1, John Doe 2, and John Doe 3 concerning the non-consensual sexual assault incident heretofore described.

38.     Plaintiff believes and therefore avers that at least one of the cell phones of the Defendant assailants was obtained by the Bethlehem Police Department (BPD) and upon extraction that there were comments from at least one of the individual assailants, which read as follows:

"We took her virginity" ; "Y'all really violated that girl"; "She was calling us Daddy"; "She was fingering herself, I never saw a girl do that"; "She was crying in the bathroom"; "So, we may have a case";  and "Yeah, cuz Berto punched her".

39.     Plaintiff believes and therefore avers that all three Defendants John Doe 1, John

Doe 2, and John Doe 3 were involved in the texting back and forth about the incident along with

other individuals.

40.     Plaintiff has no recollection of any conversation happening during Defendant

John Doe 3 accompanying her back to her own dormitory building.  She also does not actually

recall getting inside her dorm building (Wilhelm Hall) or going upstairs to her dorm room.

41.     Plaintiff woke up the next morning wearing the clothes from the night before and

remembered portions of the assaults that came back to her upon awakening.

42.     On or about that morning of August 25, 2017, upon awakening the Plaintiff met

her parents since it was freshman orientation day, and having received a text from her roommate

and an R.A., she left her parents and informed an R.A., what had happened and thereafter

formally reported the assault to campus security.

43.     Following the formal report to campus safety, the Plaintiff was introduced to a

Bethlehem Police Detective, one Moses Miller of the Bethlehem Police Department (hereinafter

the "BPD").

44.     Following the formal report to campus safety, the BPD began an investigation

into the incident and a Title IX Investigation was also begun by the Defendant Moravian.

45.     It is believed and therefore averred that Defendant Moravian's Title IX

investigation revealed that the individual Defendants had raped Plaintiff based upon the text

messages exchanged by and between them as detailed above and further discovered that the

individual Defendants had violated college policy which expressly prohibits the use of the

dissemination of video recordings of her sexual assault.

46.     Despite Moravian's knowledge of the individuals' criminal misconduct and violation of school policy, Moravian took no affirmative action towards disciplining any of the individual Defendants in any manner.

47.     While Moravian's Title IX investigators did in fact issue a No Contact Order to the individual Defendants, this directive was not honored by the individual Defendants, as detailed below.

48.     Specifically, while the Title IX investigation was underway, Plaintiff was leaving one of the dining areas with her friend when she observed John Doe 1 sitting with a group of his friends who, as Plaintiff was exiting, were yelling things towards her.

49.     At or about the same period of time, Plaintiff was approached by John Doe 1 who stood directly behind her while she was waiting in line to pay at the cafeteria.

50.     Plaintiff advised Moravian's Title IX director, Lea Breisch (hereinafter "Breisch"), of both violations to which Breisch advised Plaintiff on each occasion that these were not violations of the No Contact Order and that she would advise John Doe 1 to be more courteous in the future.

51.     Further, at the end of a football game in which Plaintiff was cheering and at which John Doe 1, to Plaintiff's knowledge, was prohibited from attending and which he did in fact participate, John Doe 1 walked into the area where she was cheering and onto the field to shake hands with the opposing team, again in violation of the no contact order.

52.     Rather than helping to ease Plaintiff's anxieties and fear for her well-being, Breisch took no action whatsoever and in fact by email advised Plaintiff on one occasion that someone had called John Doe 1 a rapist and that Plaintiff herself should be more considerate to him and watch what she says to her friends concerning him because of the existence of the no

10

contact order, all resulting in Plaintiff's further alienation, discouragement and emotional distress.

53.     Toward the end of the Title IX investigation, Plaintiff met with Breisch and Greg Meyer (hereinafter "Meyer"), Coordinator of Student Affairs, to discuss the mechanics of the anticipated Title IX hearing.

54.     During the meeting both Breisch and Meyer were strongly discouraging of Plaintiff and further advising her that the odds of any of her rapists being expelled were unlikely due to "past cases involving Title IX investigations on campus".

55.     As the result of the foregoing, Plaintiff became disillusioned with the process and ultimately decided that because the college was not taking her assault and rape seriously, and in fact was engaged in efforts to discourage her from asserting her federal rights and in an act of self-preservation she decided to withdraw the Title IX complaint and to transfer out of Moravian College.

## COUNT I

### CLAIM UNDER TITLE IX (20 U.S.C.A. §1681) DAVIS CLAIM FOR HOSTILE COLLEGIATE ENVIRONMENT
### PLAINTIFF JANE DOE V.  DEFENDANT MORAVIAN COLLEGE

### JANE DOE

#### vs.

### MORAVIAN COLLEGE

56.     Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

57.     Title IX (20 U.S.C.A. §1681), provides in subsection (a), Subject to certain exceptions, that "(n)o person in the United States shall on the basis of sex be excluded from participation in, be denied the benefits of, or be subject to discrimination under any Education

Program or activity receiving Federal Financial Assistance," where the Plaintiff, a Student, was sexually abused and harassed by the Defendants John Doe 1, John Doe 2 and John Doe 3.

58.     As set forth heretofore in the Complaint, following the first report made to Campus Security, the Plaintiff Jane Doe was subjected to the continual presence of the Defendants John Doe 1 and John Doe 2 on the Campus of Defendant Moravian despite the entry of a "No Contact Order"; and in fact; the No Contact Order was not strictly enforced against the Defendant attackers, and conversely the Defendant Moravian, offered no remedies to the victim in this matter, Plaintiff Jane Doe, who was subjected to publications and dissemination of video recordings of the actual sexual assault in violation of school policy.

59.     Plaintiff Jane Doe believes and avers that after the assault, the attackers' continued presence not only on the campus, but in and at various athletic events including those where the Plaintiff was participating in cheerleading, was and should have been ruled a violation of the No Contact Order and that same was not enforced and having to endure the continued presence of the Defendant attackers deprived her of the institution's educational benefits and opportunities.

60.     Plaintiff Jane Doe believes and avers that the complete inaction of the Defendant Moravian with respect to the violation of numerous Defendant Moravian policies including condonation of underage drinking, condonation of an unauthorized party, condonation of electronic transfer of inappropriate images, all remained unaddressed by the Defendant Moravian; and therefore, constitute deliberate indifference in the wake of this sexual assault.

61.     Plaintiff Jane Doe believes and avers that the Defendant Moravian's failure to appropriately respond to, discipline, or in any way effectively address the issues of underage drinking, and unauthorized parties, and violation of dissemination of sexually explicit materials

by electronic means, all of which involved the conduct of her attackers resulted in the Defendant failing in its duty under Title IX to prevent future harassment and contact by the violent, sexual predators, Defendants John Doe 1 and John Doe 2.  Therefore, it is believed and averred that the severity of the harassment, was within the actual and/or constructive notice of the Defendant Moravian, and that the Defendant Moravian exhibited deliberate indifference to this harassment by taking absolutely no corrective action concerning these established violations of polices outside the area of the violent sexual assault that was perpetrated upon the Plaintiff Jane Doe by the individual assailants listed herein.

62.     Plaintiff Jane Doe as a direct and proximate result of the deliberate indifference of the Defendant Moravian, following this violent sexual assault allowed this hostile collegiate environment under the standards extant in <u>Davis v. Monroe County Board of Education, et al., 119 S.Ct. 1661 (1999)</u>.

63.     Plaintiff believes and therefore avers that under the facts following the attainment of knowledge by the Defendant Moravian's employee, agent and servant, Ms. Breisch, that Defendant Moravian did not act promptly given the nature of this sexual assault, which was so severe that it effectively in the aftermath by not immediately disciplining the transgressions that were factually established, barred the victim access to an educational opportunity or benefit; and that further, Defendant Moravian had, but failed to exercise substantial control over the Defendant attackers, John Doe 1 and John Doe 2 and had actual knowledge that the continued presence and interaction of these two Defendants with the Plaintiff Jane Doe was continuing to cause further physical and emotional stress to the Plaintiff depriving her of her educational opportunity and benefits.

64.     As a direct and proximate result and substantial factor this failure to act and in deliberate indifference in the wake of these violent sexual assault caused the Plaintiff all of the damages set forth in this Complaint.

65.     Any and all commissions and/or omissions, practices and policies of Defendant Moravian as set forth above, collectively constitute violations of Title IX, 20 U.S.C.A. §1681, which prohibits sexual hostile climates in schools.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Moravian for an amount in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars, together with interest, costs and reasonable attorneys' fees.

## COUNT II

### CLAIM UNDER TITLE IX (20 U.S.C.A. §1681) BEFORE CLAIM FOR HOSTILE COLLEGIATE ENVIRONMENT
### PLAINTIFF JANE DOE V.  DEFENDANT MORAVIAN COLLEGE

### JANE DOE

#### vs.

### MORAVIAN COLLEGE

66.     Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

67.     Title IX (20 U.S.C.A. §1681), provides in subsection (a), Subject to certain exceptions, that "(n)o person in the United States shall on the basis of sex be excluded from participation in, be denied the benefits of, or be subject to discrimination under any Education Program or activity receiving Federal Financial Assistance," where the Plaintiff, as Student, was sexually abused and harassed by the Defendant assailants.

68.     Plaintiff Jane Doe believes and therefore avers that Defendant Moravian had actual notice (and itself allowed to exist) a long standing, extremely hostile sexual environment of rape on its campus.

69.     Plaintiff Jane Doe believes and therefore avers that Defendant Moravian prior to 2016 based upon data reported under the Federal Clearly Act out of 66 schools reporting in Pennsylvania that Defendant Moravian had the fourth highest total of rapes per thousand at 3.6.

70.     Plaintiff believes and therefore avers that Defendant Moravian was aware that the majority of rapes and sexual assaults occurred in the first few weeks of school year, a period known as the "Red Zone" and that Defendant Moravian knew or should have known of this fact.

71.     Plaintiff believes and therefore avers that Defendant Moravian may have been aware of a higher level of sexual assault and rape by male athletes committed upon Defendant Moravian students and that such conduct was ignored and not addressed in any meaningful fashion by Defendant Moravian.

72.     Plaintiff believes and therefore avers that Defendant Moravian knew of the propensity of assault and has responded inadequately with deliberate indifference in either a pattern of failing to report such incidents, or effectively investigate such incidents.

73.     Plaintiff believes and therefore avers that the Defendant Moravian has failed to implement appropriate disciplinary measures, or in some cases, any discipline at all, for violations of campus policies with regard to student athletes, which relate to an environment that is conducive to sexual assault and rape.  Among these activities as engaged in in this case are underage drinking, sexting and texting of explicit sexual materials without consent of people contained in the imaging, non-sexual assaults and other crimes and that the Defendant Moravian

has been aware of and condoned, ignored or failed to adequately discipline this student athlete behavior.

74.     Plaintiff believes and therefore avers that the provision of the dormitories such as the Football House described above fosters a fraternity like atmosphere wherein the Defendant Moravian failed to discipline or in any other way sanction the residents of the Football House for conducting unauthorized parties, and in particular, parties at which intoxicating beverages were commonly provided to minors in violation of Defendant Moravian policies.

75.     In addition to the improper response to allegations of athlete misconduct the Defendant Moravian has engaged in other practices that actually foster the creation of a sexually hostile environment and make female Moravian students vulnerable to sexual assault.  In particular, the Defendant Moravian's athletic department has engaged in a pattern of encouraging parties with underage drinking to benefit the program including the recruiting of athletes.

76.     Plaintiff believes and therefore avers that the Defendant Moravian's athletic departments are not Clery compliant and that that omission further fosters the rape culture among athletes.

77.     Plaintiff believes and therefore avers that Defendant Moravian does an inadequate orientation of students regarding the dangers of rape on Defendant Moravian's campus and sexual assault on Defendant Moravian's campus, as well as not mandatorily providing Clery statistics, but rather providing these materials to students "only upon request".

78.     Plaintiff believes and therefore avers that Defendant Moravian has not launched effective campus wide mandatory programing on sexual assault prevention; Red Zone education and bystander training, to properly inform matriculated students of the dangers of sexual assault on the Defendant's campus.

79.     Plaintiff believes and therefore avers that Defendant Moravian's athletics department may have interfered with and covered up allegations of misconduct by the Defendant Moravian athletes/assailants in the aftermath of the sexual assault on Plaintiff Jane Doe.

80.     Plaintiff believes that despite the evidence of actual violation of Defendant Moravian's policies regarding the sexting images, the unauthorized party, and underage drinking that no substantive or disciplinary action was taken by Defendant Moravian against these offenders in deliberate indifference to this culture of rape and sexual assault.

81.     As a direct and proximate result and substantial factor this failure to act and deliberate indifference in the wake of the violent sexual assault culture the Plaintiff was caused all the damages set forth in this Complaint.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Moravian for an amount in excess of One Hundred and Fifty Thousand ($50,000.00) Dollars, together with interest, costs and reasonable attorneys' fees.

**COUNT III**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
UNDER PENNSYLVANIA COMMON LAW**

**JANE DOE**

vs.

**MORAVIAN COLLEGE**

82.     Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

83.     Defendant Moravian by allowing the hostile collegiate environment to continue to exist between the original reporting to Defendant Moravian's campus security and up until the Plaintiff's transfer to another college, by refusing any reasonable accommodation to the Plaintiff

concerning the continued presence of the violent sexual predator Defendants, John Doe 1 and John Doe 2, to be in the presence of Plaintiff without any discipline whatsoever was acting intentionally and recklessly, beyond all possible bounds and decency and said Defendant's conduct is regarded as atrocious and utterly intolerable in a civilized society.

84.     Defendant Moravian's action in not disciplining the Defendants John Doe 1 and John Doe 2 by and through their agents, servants and employees and minimizing the Defendant's conduct apart from the violent sexual assault (sexting, texting, transmitting images, underage drinking) constitutes actions taken intentionally and/or recklessly beyond all possible bounds and decency, and said Defendant's conduct is regarded as atrocious and utterly intolerable in a civilized society.

85.     In approximately October 2017, Plaintiff was attending a basketball game with her parents.

86.     The three were sitting in the bleachers when Defendant John Doe 1 came into the game with one of his friends and sat in the row directly behind her parents.

87.     Throughout the game, Defendant John Doe 1 and his friends starred at Plaintiff and laughed causing Plaintiff to feel extremely uncomfortable and about which she informed her parents at half time.

88.     After going to the restroom and returning to her seat, Plaintiff observed Defendant John Doe 1 speaking to her father who requested that Defendant John Doe 1 move his seat which he refused.

89.     To make matters worse, during the second half of the basketball game, Defendant John Doe 2 came into the game and sat next to Defendant John Doe 1.

90.     After the game, Plaintiff's father had a verbal confrontation with Defendant John Doe 1 and upon information and belief the president of the College, President Bryon Grigsby, was sitting directly across but later claimed that he was unaware of the altercation.

91.     Following its occurrence, Plaintiff informed Breisch who in concert with Meyer, determined that Plaintiff was the one responsible for the violation of the No Contact Order and issued a formal violation which was kept in her file.

92.     Upon deciding to withdraw from Moravian and during the course of Plaintiff's transfer she requested that Meyer seal and/or expunge the violation in her student affairs record which was refused, citing bureaucratic and procedural reasons and with the intent to harm her, namely, that the time period to "appeal" the violation had elapsed, despite Plaintiff's explanations that she was then dealing with medical problems.

93.     Due to Meyer's refusal to expunge or to seal her violation, Plaintiff was thus required to needlessly explain to her admissions counselor the circumstances of her rape.

94.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the bringing about the damages to the Plaintiff Jane Doe, Plaintiff suffered a severe infliction of emotional distress and embarrassment, past, present and future.

95.     Over one year later in February 2019, Meyer informed Plaintiff that she was then eligible to have her violation expunged and/or sealed by email which included a link to a document entitled "Sealed Record Request Form" which, contrary to its innocuous title contains fields which are required to be completed which essentially further required Plaintiff to admit to the violation of the No Contact Order, to express remorse for such admission and to relive the circumstances of her rape and exposure to a sexually hostile educational environment created by Moravian.

96.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the bringing about the damages to the Plaintiff Jane Doe, the acts of the Defendant Moravian and its agent, servant and employees, the Plaintiff Jane Doe suffered shock and injury to her nerves and nervous system and other severe and serious injuries, all of which are or may be permanent in nature.

97.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the bringing about the damages to the Plaintiff Jane Doe, the acts of the Defendant Moravian and its agent, servant and employees, the Plaintiff lived in continual fear of physical harm and severe emotional distress because of the presence of the violent, sexual predators Defendants John Doe 1 and John Doe 2.

98.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the bringing about the damages to the Plaintiff Jane Doe, the acts of the Moravian and its agent, servant and employees, the Plaintiff Jane Doe suffered and will continue to suffer embarrassment, emotional distress and anguish, and loss of the enjoyment of life.

99.     At all times material hereto, the Moravian and their agents, servants and employees, willful misconduct, as heretofore set forth in this Complaint, was a part of an ongoing pattern of discrimination, and were continuing violations of the Plaintiff's rights leading to a compounding of damages as set forth heretofore.

100.     Plaintiff Jane Doe hereby demands punitive damages against the Moravian, based upon these outrageous and/or reckless acts believed to have been accompanied by bad motives and/or with a reckless indifference to the interest and welfare of the Plaintiff Jane Doe.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against Moravian for an amount in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars, together with punitive damages.

## COUNT IV
## COMMON LAW NEGLIGENCE
### JANE DOE
### V.
### DEFENDANT MORAVIAN COLLEGE

101.    Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

102.    Defendant Moravian furnished housing in the form of dormitories including the Cheerleader House, the Football House and the Austin-Spangenberg house referred to as "Spang-F" where Plaintiff's eventual assault occurred.  Defendant Moravian had at all times relevant to this dispute a program of security in effect to protect students, including Plaintiff, from potential violent criminal acts of third parties including other students matriculated at Defendant Moravian.

103.    In particular, Defendant Moravian maintains locks on all dormitories which require a scan card for entry, employs a Security Force and/or Con campus and employs student Resident Advisors ("RA's").

104.    It is believed and therefore averred that the threat of violence and sexual assault was foreseeable to Defendant Moravian insofar as it is statistically known that a large majority of reported sexual assaults or rapes on its campus and all campuses nationwide occur during the first week of classes, including orientation weeks as it occurred in this case.

21

105.    Defendant Moravian owed a heightened duty to Plaintiff Jane Doe, a resident tenant to warn against these acts as well as take reasonable measures to provide enhanced security and training of security personnel to ensure the safety of its female students including Plaintiff.

106.    Plaintiff Jane Doe was under the reasonable belief that Defendant Moravian had in fact adequate security and security measures in place to guard against violent sexual assault.

107.    Defendant Moravian's inaction in failing to properly provide security warnings and/or measures and/or personnel was a substantial factor in causing Plaintiff Jane Doe's violent sexual assault which was foreseeable by Defendant Moravian based on its own record keeping as required by State and Federal law.

108.    It is believed that Defendant Moravian had a duty to not only to take proper security measures to guard against such violent sexual assault but further had a duty to see that these security measures and that its program of security was properly implemented and followed.

109.    Defendant Moravian further failed in its duty to warn Plaintiff of the possible dangerous activities on campus and should further provide an explanation of the University security measures in place.

110.    Plaintiff incorporates herein by reference all the negligence, intentional and deliberately indifferent acts set forth heretofore in this Complaint.

111.    As a direct and proximate result of the negligent acts of the Defendant Moravian, the Plaintiff has suffered all of the damages set forth heretofore in this Complaint, as though set forth fully and at length herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant Moravian for an amount in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars.

## COUNT V

## ASSAULT AND BATTERY

### JANE DOE

### V.

### DEFENDANT JOHN DOE 1

112.    Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

113.    Plaintiff believes and therefore avers that the Defendant John Doe 1 intentionally attempted by force to do an injury to her person; to wit, commit a forcible acts of penetration (vaginally and orally) upon the Plaintiff without her consent.

114.    Plaintiff believes and therefore avers that the Defendant as set forth heretofore committed battery upon her in a violent manner without her consent by actually penetrating her orally and vaginally on August 25, 2017.

115.    As a direct and proximate result and as a substantial factor in the bringing about the injuries to the Plaintiff, the Plaintiff Jane Doe suffered all the injuries and damages set forth heretofore in this Complaint as through same were set forth fully and at length herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant John Doe 1 for an amount in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars, together with punitive damages.

## COUNT VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## UNDER PENNSYLVANIA COMMON LAW

### JANE DOE

### V.

### DEFENDANT JOHN DOE 1

116.    Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

117.    Defendant Moravian by allowing the hostile collegiate environment to continue to exist between the original reporting to Defendant Moravian's agent, servant and employees, while Plaintiff Jane Doe was in attendance at Defendant Moravian, by refusing any reasonable accommodation to the Plaintiff concerning the continued presence of the violent sexual predator Defendant John Doe 1 on the campus without disciplining him as set forth heretofore was regarded as atrocious and utterly intolerable in a civilized society.

118.    Defendant John Doe 1's actions in continuing contacts with the Plaintiff after this violent sexual assault continued actions taken intentionally and/or recklessly beyond all possible bounds and decency, and said Defendant John Doe 1's conduct is regarded as atrocious and utterly intolerable in a civilized society.

119.    Defendant John Doe 1's participation in texting about this incident as well as participating in the electronic transmission of images from the assault, were acts taken intentionally and/or recklessly, and constitute acts beyond all possible bounds and decency and said Defendant's conduct was continuous and regarded as atrocious, and utterly intolerable in a civilized society.

24

120.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, Plaintiff suffered a severe infliction of emotional distress and embarrassment, past, present and future.

121.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant John Doe 1, the Plaintiff lived severe emotional distress because of the presence of the violent, sexual predator Defendant John Doe 1, up until her transfer from Defendant Moravian.

122.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant John Doe 1, the Plaintiff Jane Doe suffered shock and injury to her nerves and nervous system and other severe and serious injuries, all of which are or may be permanent in nature.

123.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant John Doe 1, the Plaintiff Jane Doe suffered and will continue to suffer embarrassment, emotional distress and anguish, and loss of the enjoyment of life.

124.    At all times material hereto, the Defendant John Doe 1's willful misconduct, as heretofore set forth in this Complaint, was a part of an ongoing pattern of discrimination, and were continuing violations of the Plaintiff's rights leading to a compounding of damages as set forth heretofore.

125.    Plaintiff Jane Doe hereby demands punitive damages against the Defendant John Doe 1, based upon these outrageous and/or reckless acts believed to have been accompanied by

bad motives and/or with a reckless indifference to the interest and welfare of the Plaintiff Jane Doe.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant John Doe 1 for an amount in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars, together with punitive damages.

<u>**COUNT VII**</u>

<u>**ASSAULT AND BATTERY**</u>

**JANE DOE**

**V.**

**DEFENDANT JOHN DOE 2**

126.    Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

127.    Plaintiff believes and therefore avers that the Defendant John Doe 2 intentionally attempted by force to do an injury to her person; to wit, commit a forcible acts of penetration (vaginally and orally) upon the Plaintiff without her consent.

128.    Plaintiff believes and therefore avers that the Defendant as set forth heretofore committed battery upon her in a violent manner without her consent by punching her in the face and actually penetrating her orally and vaginally on August 25, 2017.

129.    As a direct and proximate result and as a substantial factor in the bringing about the injuries to the Plaintiff, the Plaintiff Jane Doe suffered all the injuries and damages set forth heretofore in this Complaint as through same were set forth fully and at length herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant John Doe 2 for an amount in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars, together with punitive damages.

## COUNT VIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## UNDER PENNSYLVANIA COMMON LAW

### JANE DOE

### V.

### DEFENDANT JOHN DOE 2

130.    Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

131.    Defendant Moravian by allowing the hostile collegiate environment to continue to exist between the original reporting to Defendant Moravian's agent, servant and employees, while Plaintiff Jane Doe was in attendance at Defendant Moravian, by refusing any reasonable accommodation to the Plaintiff concerning the continued presence of the violent sexual predator Defendant John Doe 2 on the campus without disciplining him as set forth heretofore was regarded as atrocious and utterly intolerable in a civilized society.

132.    Defendant John Doe 2's actions in continuing contacts with the Plaintiff after this violent sexual assault continued actions taken intentionally and/or recklessly beyond all possible bounds and decency, and said Defendant John Doe 2's conduct is regarded as atrocious and utterly intolerable in a civilized society.

133.    Defendant John Doe 2's participation in texting about this incident as well as participating in the electronic transmission of images from the assault, were acts taken intentionally and/or recklessly, and constitute acts beyond all possible bounds and decency and said Defendant's conduct was continuous and regarded as atrocious, and utterly intolerable in a civilized society.

134.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, Plaintiff suffered a severe infliction of emotional distress and embarrassment, past, present and future.

135.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant John Doe 2, the Plaintiff lived severe emotional distress because of the presence of the violent, sexual predator Defendant John Doe 2, up until her transfer from Defendant Moravian.

136.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant John Doe 2, the Plaintiff Jane Doe suffered shock and injury to her nerves and nervous system and other severe and serious injuries, all of which are or may be permanent in nature.

137.     As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant John Doe 2, the Plaintiff Jane Doe suffered and will continue to suffer embarrassment, emotional distress and anguish, and loss of the enjoyment of life.

138.     At all times material hereto, the Defendant John Doe 2's willful misconduct, as heretofore set forth in this Complaint, was a part of an ongoing pattern of discrimination, and were continuing violations of the Plaintiff's rights leading to a compounding of damages as set forth heretofore.

139.     Plaintiff Jane Doe hereby demands punitive damages against the Defendant John Doe 2, based upon these outrageous and/or reckless acts believed to have been accompanied by

bad motives and/or with a reckless indifference to the interest and welfare of the Plaintiff Jane Doe.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant John Doe 2 for an amount in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars, together with punitive damages.

<u>**COUNT IX**</u>

<u>**ASSAULT AND BATTERY**</u>

**JANE DOE**

**V.**

**DEFENDANT JOHN DOE 3**

140.    Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

141.    Plaintiff believes and therefore avers that the Defendant John Doe 3 intentionally attempted by force to do an injury to her person; to wit, commit a forcible acts of penetration (vaginally and orally) upon the Plaintiff without her consent.

142.    Plaintiff believes and therefore avers that the Defendant John Doe 3 as set forth heretofore committed battery upon her in a violent manner without her consent by actually penetrating her orally and vaginally on August 25, 2017.

143.    As a direct and proximate result and as a substantial factor in the bringing about the injuries to the Plaintiff, the Plaintiff Jane Doe suffered all the injuries and damages set forth heretofore in this Complaint as through same were set forth fully and at length herein.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant John Doe 3 for an amount in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars, together with punitive damages.

## COUNT X
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER PENNSYLVANIA COMMON LAW

**JANE DOE**

**V.**

**DEFENDANT JOHN DOE 3**

144.    Plaintiff incorporates by reference all foregoing paragraphs, as though same were set forth fully and at length herein.

145.    Defendant Moravian by allowing the hostile collegiate environment to continue to exist between the original reporting to Defendant Moravian's agent, servant and employees, while Plaintiff Jane Doe was in attendance at Defendant Moravian, by refusing any reasonable accommodation to the Plaintiff was regarded as atrocious and utterly intolerable in a civilized society.

146.    Defendant John Doe 3's actions concerning the Plaintiff after this violent sexual assault were taken intentionally and/or recklessly beyond all possible bounds and decency, and said Defendant John Doe 3's conduct is regarded as atrocious and utterly intolerable in a civilized society.

147.    Defendant John Doe 3's participation in texting about this incident as well as participating in the electronic transmission of images from the assault, were acts taken intentionally and/or recklessly, and constitute acts beyond all possible bounds and decency and said Defendant's conduct was continuous and regarded as atrocious, and utterly intolerable in a civilized society.

148.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, Plaintiff suffered a severe infliction of emotional distress and embarrassment, past, present and future.

149.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant John Doe 3, the Plaintiff lived with severe emotional distress.

150.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant John Doe 3, the Plaintiff Jane Doe suffered shock and injury to her nerves and nervous system and other severe and serious injuries, all of which are or may be permanent in nature.

151.    As a direct and proximate result of the above-described occurrence and as a substantial factor in the brining about the damages to the Plaintiff Jane Doe, the acts of the Defendant John Doe 3, the Plaintiff Jane Doe suffered and will continue to suffer embarrassment, emotional distress and anguish, and loss of the enjoyment of life.

152.    At all times material hereto, the Defendant John Doe 3's willful misconduct, as heretofore set forth in this Complaint, was a part of an ongoing pattern of discrimination, and were continuing violations of the Plaintiff's rights leading to a compounding of damages as set forth heretofore.

153.    Plaintiff Jane Doe hereby demands punitive damages against the Defendant John Doe 3, based upon these outrageous and/or reckless acts believed to have been accompanied by bad motives and/or with a reckless indifference to the interest and welfare of the Plaintiff Jane Doe.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant John Doe 3 for an amount in excess of One Hundred and Fifty Thousand ($150,000.00) Dollars, together with punitive damages.

*/s/ Adam D. Meshkov*
JOHN R. VIVIAN, JR.
I.D. No. 34459
831 Lehigh Street
Easton, PA  18042
(610) 258-6625
jrvivian@verizon.net

ADAM D. MESHKOV
I.D. No. 94856
ELEANOR M. BRESLIN
I.D. No. 93914
830 Lehigh Street
Easton, PA  18042
(610) 438-6300
adm@meshkovbreslin.com
emb@meshkovbreslin.com

***Attorneys for Plaintiff***