IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, <br><br> Plaintiff, <br><br> v. <br><br> MORAVIAN COLLEGE, JOHN DOE 1, JOHN DOE 2 and JOHN DOE 3, Individually and Jointly, <br><br> Defendants. | NO. 20-00377-JMG |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FOR SPOLIATION OF EVIDENCE**

**I.   INTRODUCTION**

This case involves criminal allegations made by a former Moravian College student (Plaintiff or Jane Doe[1]) that she was forcibly raped by two fellow former Moravian students and their guest, a then Bloomsburg University student, (collectively "John Doe Defendants") on August 25, 2017, and that the rape was videotaped and disseminated. The John Doe Defendants have consistently maintained that the sexual encounter between them was consensual. The Bethlehem Police Department ("BPD"), Northampton County District Attorney's Office, and Moravian College investigated Plaintiff's allegations in 2017. After reviewing the relevant evidence, including videos of the sexual encounter and a text message that Jane Doe sent to John Doe 3 shortly thereafter, **no** criminal charges were filed against **any** of the John Doe Defendants. Mere days before Moravian's internal hearing regarding the incident was to commence, Plaintiff decided not to proceed with the hearing. Nearly two years later, Plaintiff filed this civil lawsuit

---

[1] Plaintiff filed this action under a pseudonym. The John Doe Defendants later successfully moved to proceed under pseudonym as well.

against the John Doe Defendants for Assault and Battery (Counts V, VII, IX) and Intentional Infliction of Emotional Distress (Counts VI, VIII, X). Plaintiff has also asserted claims against Moravian (Counts I – IV).

There is no dispute that a central issue in this case is whether the sexual encounter between Plaintiff and the John Doe Defendants was consensual. (ECF No. 83, fn 1) Plaintiff sought and obtained materials compiled by the Northampton County DA and David M. Petzold Forensic Crime Laboratory ("Petzold Lab"), including an extraction of Plaintiff's cellphone. By Court Order, only the portion of the extraction records from Wednesday, August 23, 2017 through Monday, August 28, 2017 was produced in discovery. Despite Plaintiff's sworn testimony that a) she did **not** delete anything from her cellphone before turning it over to authorities for extraction and b) her practice was to leave her text conversations **open and undeleted**, the extraction report reveals that Plaintiff manually deleted **368** instant messages (also commonly referred to as "texts" or "text messages") from her cellphone during this limited, critical period **before** she gave it to the BPD. Plaintiff has offered no explanation as to why she deleted the instant messages. While the Petzold Lab recovered some complete texts, others were not recovered at all or were only partially recovered with key information missing.

Plaintiff's spoliation of evidence is egregious and aggravated by the serious nature of her allegations against the John Doe Defendants and her professed lack of memory of the key events, including her decision to delete content from her cellphone, such that most serious of sanctions, dismissal of her complaint, is warranted.

**II.     FACTUAL BACKGROUND**

John Doe 1 incorporates, by reference, the Factual Background as outlined in the Memorandum of Law in Support of Motion for Summary Judgment.

2

### III. PROCEDURAL BACKGROUND

After engaging in pre-complaint discovery, Plaintiff initiated this lawsuit on December 13, 2019, in the Northampton County Court of Pleas. Moravian later removed this case to the District Court for the Eastern District of Pennsylvania. On February 2, 2022, this Court entered an order granting in part and denying in part Third-Party Motions to Quash Subpoenas directed to the BPD, the Northampton County DA, and the Petzold Lab. (ECF No. 83) On February 14, 2022, this Court amended its previous order, requiring the Petzold Lab to make available cellphone extractions from August 23 through August 28, 2017, only. (ECF No. 86) All parties, with the exception of John Doe 3, obtained copies of the extraction reports[2].

The Fourth Amended Scheduling Order provides that all fact and expert discovery shall be completed no later than July 31, 2022. (ECF No. 89) Affirmative expert reports were due July 31, 2022. (ECF No. 89) Plaintiff did not come forward with any expert reports.

### IV. LEGAL STANDARDS

#### A. **Legal Standard for Spoliation and Sanctions**

Spoliation occurs when evidence is in a party's control, said evidence is relevant to the claims or defenses in the case, the subject evidence has been suppressed or withheld, and the duty to preserve the evidence was reasonably foreseeable. *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012). Federal Rule of Civil Procedure 37(e) specifically addresses the failure to preserve electronically stored information.

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

---

[2] The correct email address of John Doe 3, who is *pro se*, was only confirmed with the Court on September 20, 2022 and with counsel of record on July 21, 2022.

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Whether a court will issue sanctions and the severity of sanctions imposed depends on the weight of the following three factors:

1. The degree of fault of the party who altered or destroyed the evidence;

2. The degree of prejudice suffered by the opposing party; and

3. Whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

V. **ARGUMENT**

    A. **John Doe 1 is entitled to dismissal due to Jane Doe's egregious and intentional spoliation of evidence.**

        a. **There is no dispute that Jane Doe deleted three hundred sixty-eight (368) instant messages from her cellphone from the period between August 23 and August 27, 2017, knowing a criminal investigation had been launched into her claims of rape on August 25, 2017.**

Plaintiff reported that she was raped by the John Doe Defendants to Moravian campus police and the BPD at approximately noon on Friday, August 25, 2017. (SUMF ¶47) She provided a written statement that same date. (SUMF ¶48; Ex. M at 01439, 01467) She was interviewed on Saturday, August 26, 2017 by Moravian PD. (SUMF ¶49) Three days later, on Monday, August

28, 2017, Plaintiff gave her consent to have her entire cellphone downloaded[3]. (SUMF ¶59-60) The extraction of her cellphone was performed by the Petzold Lab that same date. (SUMF ¶60) There can be no doubt that Jane Doe understood the gravity of her criminal claims, and that BPD believed her cellphone might contain information relevant to same.

Plaintiff's testimony regarding her habit and custom with respect to deleting text messages was varied and inconsistent. Plaintiff testified that it was her practice to keep all chats and messages on her cellphone. (SUMF ¶65; Ex. E, 29:10-21) She explicitly denied deleting any content from her cellphone before surrendering it to BPD. (SUMF ¶64; Ex. E, 29:10-21;) More often than not[4], when confronted with specific text messages which she deleted from her cellphone, Plaintiff could offer little to no explanation regarding her decision to do so. (*See* generally Ex. E, F) She repeatedly testified that she did not know or recall[5]. (*See* Ex. E, 53:17-23; 58:25-59:11; 61:8-174; 62:16-18; 62:19-63:5; 63:24-65:1; 65:24-66:3; 68:22-69:12; 72:21-73:23; 77:25-79:4; *see also* Ex. F, 352:2-368:20; 371:12-18; 372:20-378:20)

Plaintiff sought and obtained an extraction report from the Petzold Lab of Jane Doe, John Doe 1, and John Doe 2's cellphone from **Wednesday, August 23** through **Monday, August 28, 2017**. (ECF No. 83 and 86). The extraction report shows that **368** instant messages were deleted from Plaintiff's cellphone from this limited and crucial period. (SUMF ¶61) To be clear, the extraction reports produced were based on information collected on August 28, 2017. Accordingly, any content marked as deleted from Plaintiff's cellphone must have been manually deleted from it. (Ex. KK, 36:19-37:8)

---

[3] The telephones of John Doe 1 and John Doe 2 were also surrendered and extracted on this date. (SUMF ¶59-60) The BPD and the Petzold Lab never collected or extracted John Doe 3's cellphone.
[4] On one occasion, she offered that she deleted "unimportant" messages from her cellphone to save space. (Ex. E, 53:16-20)
[5] Similarly, when confronted with the content of her actual text messages, she repeatedly said she had not recollection of the subject matter of the exchange. (*See also* Ex. E, 53:17-23; 58:25-59:11; 61:8-174; 62:16-18; 62:19-63:5; 63:24-65:1; 65:24-66:3; 68:22-69:12; 72:21-73:23; 77:25-79:4; *see also* Ex. F, 352:2-368:20; 371:12-18; 372:20-378:20)

Plaintiff has offered no alternative explanation, from a competent forensic expert or otherwise, as to how this critical information came to be deleted from her cellphone. (*See* generally Ex. E, F) There is no evidence of record to suggest that her cellphone was out of her possession during the relevant period. There is no evidence to support the notion that her cellphone was accessed by a person who either knew or could break her cellphone's security pass code. The only plausible explanation is that Jane Doe manually deleted 368 instant messages from her cellphone **before** giving it to authorities investigating her serious claim of rape. Based on this information alone, John Doe 1 is entitled to a presumption that any lost information was unfavorable to Jane Doe and an adverse jury instruction regarding same.

### b. **John Doe 1 has been prejudiced by Jane Doe's spoilation of evidence that is directly relevant to the consensual nature of the subject sexual encounter, her capacity to consent to same, her state of mind, and her credibility.[6]**

The Petzold Lab was able to retrieve some, but not all, complete messages deleted from Plaintiff's cellphone. (SUMF ¶¶62-63; *see generally* Ex. Z) Many other text messages could not be recovered at all or were only partially recovered with key information (e.g., identity of the sender/recipient, content of message, etc.) lost forever. (SUMF ¶62) The inability to retrieve these messages is not the fault of the Petzold Lab or any of the Defendants. No amount of additional discovery could ever restore or replace the lost information. These messages are relevant to the question of consent, Plaintiff's ability to give consent, her state of mind, and her credibility.

***Jane Doe deleted the only text messages between herself and any of the John Doe Defendants when she deleted two text message exchanges with John Doe 3 from August 25, 2017 and August 26, 2017 before turning her cellphone over to authorities on August 28, 2017.***

The individual parties did not know each other before the events that give rise to this lawsuit. (SUMF ¶19) There is no dispute that, following the sexual encounter, John Doe 3 walked

---

[6] What follows is a discussion of just some of the 368 text messages deleted from Plaintiff's cell phone.

6

Jane Doe back to her dorm. (SUMF ¶42; Ex. F, 343:4-22) He verbally gave her his phone number, which she entered directly into her cellphone. (SUMF ¶43; Ex. K, 79:3-9) John Doe 3 did not have a functioning cellphone at the time and did not take her cellphone number. (Ex. K, 80:2-7)

Jane Doe's cellphone extraction report shows that John Doe 3's cellphone number was added to her cellphone at 1:57 a.m. on Friday, August 25, 2017. (SUMF ¶43) There is no dispute that there was text activity on Plaintiff's cellphone on Friday, August 25, 2017, at 2:23 a.m. and Saturday, August 26, 2017, at 1:30 p.m.[7] (Ex. Z at 1961, 1976) Plaintiff deleted both messages from her cellphone. (Ex. Z at 1961, 1976)

The text message from Friday, August 25, 2017, at 2:23 a.m. was preserved by John Doe 3. (SUMF ¶58) Accordingly, the content and significance of this text message is not unknown to the parties. While deleted and unrecoverable from Plaintiff's cellphone, the missing text message shares notable characteristics (i.e., date, time, and Jane Doe as a sender) with a key text message identified during BPD's 2017 criminal investigation. (Ex. Z at 01961) On Sunday, August 27, 2017, just two days after Plaintiff accused the John Doe Defendants of rape, John Doe 3 informed the BPD that he received the following message from an individual with the phone number (570) 527-7413[8] on Friday, August 25 at 2:23 a.m., the night of the alleged rape. (SUMF ¶57)

---

[7] The extraction report uses military time, which has been converted for ease of reference.
[8] Jane Doe's phone number, at all relevant times, was (570) 527-7413. (SUMF ¶5)



(SUMF ¶57; Ex. U at 1465; Ex. K, 85:19-86:25; Ex. E at 00569). Notably, when confronted with this text message during Moravian's investigation, Jane Doe admitted to the possibility of sending it. (Ex. S at 01708)

Taken at face value, Jane Doe's chief concern in this clear and cogent text message sent shortly after she left Spangenberg F and arrived back to her dorm was that her peers would learn something that she did not want them to know (namely that she had a consensual sexual encounter with 3 black males at the same time before the start of the fall semester[9]). This knowledge could obviously adversely impact her first year of college. There is no suggestion that she was threatened, harmed, or violated in any way in this text message. Rather, Jane Doe simply did not want others to know about it. She did not want the John Doe Defendants to talk. This text message also strongly suggests that Jane Doe had sufficient capacity not only to consent to the sexual encounter, but also to cover it up after the fact. The value of this text message, which Plaintiff deleted and attempted to hide from being discovered, cannot be overstated. This text message was one of the reasons the Northampton County DA did not file charges against the John Doe Defendants. (Ex. M at 01450)

---

[9] This is the first of a series of steps Jane Doe took, which included deleting many text messages, to cover what actually occurred that evening.

Plaintiff's counsel has made his position on this particular text message a matter of record[10]. It is anticipated that Plaintiff will repeat her argument that the screen shot of a text message cannot be authenticated or is otherwise inadmissible at trial. Plaintiff cannot be permitted to capitalize on her spoliation of evidence.

The text message from Friday, August 25, 2017, at 2:23 a.m. was not the only text message exchanged between Jane Doe and John Doe 3. John Doe 3, who has never received a copy of the extraction report, testified about sending a text message to Jane Doe after learning of her accusations of rape. (Ex. K, 88:2-23) According to Plaintiff's extraction report, she deleted the below text message which she received on August 26, 2017 at 1:30 p.m. (Ex. Z at 01974)

| 13 | Native Messages | | +15705277413 Jane Doe (me)* (owner) | Timestamp: 8/26/2017 13:30(UTC-4) | Direction: Incoming Body: If you said we assaulted you or raped you any of that I'm gonna sue you for false claims cause you know that ain't the case Participants: Participant  Delivered  Read  Played +15705277413 Jane Doe (me) Status: Unread Message Type: SMS Folder: Inbox | Yes |

---

[10] At Jane Doe's deposition, her counsel responded as follows when counsel for Moravian attempted to question her about the 2:23 text message.

> Mr. Vivian: Yeah, just let me briefly state my objection. This is the document I was talking about before, so I apologize for before. This is a supposed screenshot that was sent in its current form. I don't believe it can be authenticated, so my objection is that you – you can't say it came from the phone basically at this point.

(Ex. E, 65:13-20).

9

Notably, another portion of the extraction report shows that there was a text message with a contact labeled "KD" and an associated phone number of John Doe 3 on August 26, 2017, at 1:30 p.m. The content of the text message is missing. (Ex. Z at 01955) Jane Doe did **not** respond to this text message. (*See generally* Ex. Z; *see also* Ex. K, 88:2-20) She did **not** dispute its contents. (*See generally* Ex. Z; *see also* Ex. K, 88:2-20) Jane Doe did **not** make any authorities (BPD, Northampton County DA, or Moravian) aware of this text message. (*See generally* Exs. M, S) She did, however, delete it. (Ex. Z at 01955, 01974) Petzold Lab was able to retrieve portions of this message. Once again, Jane Doe had information directly relevant to her criminal claim of rape, with one of her alleged rapists, and she chose to destroy it.

***Before warning Joe Doe 3 and his friends not to talk, Jane Doe sent and deleted another clear and cogent text message that does not support her claim of rape and establishes her capacity to consent.***

Although she claims to have stopped drinking alcohol by 9:00 p.m. and drank only water given by a teammate thereafter, Plaintiff has speculated she somehow lacked capacity to consent to sexual activity due to intoxication or ingestion of another unknown substance. (*See* Ex. A) Not only has Plaintiff failed to produce expert support for these claims, but she also deleted well over 300 text messages from the relevant period where she sent clear, cogent text messages. (*See generally* Ex. Z)

| # | Source | From | To | All timestamps | Content | Deleted |
|---|---|---|---|---|---|---|
| 99 | Native Messages | +15705277413 Jane Doe (me)* (owner) | | Timestamp: 8/25/2017 02:21(UTC-4) | Direction: Outgoing Body: I'm gonna assume you're sleeping. Just text me in the morning. I hope your night went well. Good night Status: Sent Message Type: SMS Folder: Sent | Yes |

(Ex. Z at 02008) When directly questioned about this particular text message, Jane Doe had no idea to whom she sent it. (Ex. F, 368:13-20) But for the work of Petzold Lab, Defendants would know nothing of this exchange because Plaintiff deleted it.

Even with the assistance of the Petzold Lab, Defendants have only been able to secure incomplete information. The name and phone number of the text message recipient were not recovered. (Ex. Z at 02008) Accordingly, Defendants were deprived of the opportunity to question the recipient of this message, a person who received a text message from Jane Doe shortly after the alleged rape and at a time when Plaintiff claims she lacked capacity due to either intoxication or ingestion of another unknown substance.

*Jane Doe deleted text messages with a childhood friend discussing management of the sexual encounter.*

Plaintiff also deleted the below text messaged she received from her childhood friend from August 25, 2017, at 5:00 a.m., the morning of the alleged rape. Jane Doe stated she did not recall receiving this text message or why she deleted it. (Ex. E, 63:6-20; 77:20-78:11)



(Ex. Z at 02006) Just hours after the alleged rape, Jane Doe's childhood friend instructed her to shower and disclose something to "branden[11]" before he learns from another source. She further noted that "branden" wasn't so perfect in the past and it is now Jane Doe's turn to do some explaining. These texts strongly suggest that Jane Doe engaged in activity (potentially unprotected sex with 3 individuals who were not Branden), and she would need to disclose it him. A few moments later, her childhood friend continued as follow:

---

[11] On information and belief, this text message refers to Branden Decker, whom some witnesses have identified as Jane Doe's boyfriend at the time of the sexual encounter. (Ex. E, 79:15-24; Ex. DD at 02545)

12



(Ex. Z at 02005) The follow up text message from Jane Doe's childhood friend suggests that if questioned about the sexual encounter Jane Doe should tell anyone who is not one of her "girls" that she doesn't know what happened[12], but it will never happen again. Neither of these text messages suggest that the sender was under the impression that Jane Doe was raped. Jane Doe did not respond in any way to correct her friend or otherwise suggest that she did not have anything to explain to anyone because she was raped. Whatever interpretation might be offered by Plaintiff or her childhood friend regarding these text messages and their meaning, it is undisputed that Plaintiff deleted them. Jane Doe made a determination that these text messages were not favorable to her. Petzold Lab was able to recover them. (SUMF ¶¶59-62; Ex. Z at 02005-02006)

---

[12] Many of the statements Jane Doe has offered during the course of the criminal investigation, Moravian's Title IV investigation, and this litigation have also been versions of this very instruction.

13

***Content of several additional text messages deleted by Jane Doe
could not be completely restored by Petzold Lab.***

Among the text messages that Jane Doe deleted, and the Petzold Crime Lab was able to partially recover despite her actions to delete them, were a series of text messages (a limited portion of which are included below) that she sent to an unknown person about a failed relationship beginning on August 23, 2017 at approximately 1:45 a.m. and continuing through approximately 9:35 p.m. that evening. (Ex. Z at 02086-02117) These messages speak to her state of mind shortly before the alleged rape. She was angry and distraught.

| # | Source | From | To | All timestamps | Content | Deleted |
|---|---|---|---|---|---|---|
| 366 | Native Messages | +15705277413 Jane Doe (me)* (owner) | | Timestamp: 8/23/2017 01:53(UTC-4) | Direction: Outgoing<br>Body: I put in a lot of work so far into this, so I need to know if you're still serious about this or if you want to talk to other people & that's why you're slowing it down.<br>Status: Sent<br>Message Type: SMS<br>Folder: Sent | Yes |
| 364 | Native Messages | +15705277413 Jane Doe (me)* (owner) | | Timestamp: 8/23/2017 01:53(UTC-4) | Direction: Outgoing<br>Body: I don't want anybody else with you, and if I am what you want, then I'm willing to work on it with you and slow it down. But I need you to still be committed to me & not hide me to your friends/say I'm your girl if that's what's going on.<br>Status: Sent<br>Message Type: SMS<br>Folder: Sent | Yes |

14

| # | Source | From | To | All timestamps | Content | Deleted |
|---|---|---|---|---|---|---|
| 346 | Native Messages | +15705277413 Jane Doe (me)* (owner) | | Timestamp: 8/23/2017 02:06(UTC-4) | Direction: Outgoing Body: I need an answer to all of this too whenever you read it. I've been all about you from day 1. I want to save this, but I can't do it alone. Am I your girl? Even if we're just slowing it down a little, am I still your girl? Status: Sent Message Type: SMS Folder: Sent | Yes |

| # | Source | From | To | All timestamps | Content | Deleted |
|---|---|---|---|---|---|---|
| 333 | Native Messages | +15705277413 Jane Doe (me)* (owner) | | Timestamp: 8/23/2017 06:17(UTC-4) | Direction: Outgoing Body: Alright, I'm just going to start over. It's a new day, and I won't let this come between us. I can slow it down as long as you're still loyal to me. Status: Sent Message Type: SMS Folder: Sent | Yes |
| 332 | Native Messages | +15705277413 Jane Doe (me)* (owner) | | Timestamp: 8/23/2017 06:18(UTC-4) | Direction: Outgoing Body: So with that being said, good morning & text me whenever you're free & if you want to make plans to see each other today, let me know. I'm free in the afternoon & at night again. Have a good day. ❤ Status: Sent Message Type: SMS Folder: Sent | Yes |

15

| # | Source | From | To | All timestamps | Content | Deleted |
|---|--------|------|-----|----------------|---------|---------|
| 292 | Native Messages | +15705277413 Jane Doe (me)* (owner) | | Timestamp: 8/23/2017 21:35(UTC-4) | Direction: Outgoing Body: Can you let me know what I'm doing here? Do you still want this or not Bc I'm tired of being the only one fighting for this Status: Sent Message Type: SMS Folder: Sent | Yes |

(Ex. Z at 02086, 02104, 02105, 02110, 02116, 02117) At her deposition, Plaintiff incredibly was unable to offer any explanation as to what the text messages were about or why she deleted them. (Ex. F, 351:25-365:19)

Because of Plaintiff's efforts to delete messages from her cellphone and her professed lack of memory, we will never know what Jane Doe meant or whom she was talking to on August 25, 2017, at 8:54 a.m. when she told an unknown person the following:

| # | Source | From | To | All timestamps | Content | Deleted |
|---|--------|------|-----|----------------|---------|---------|
| 80 | Native Messages | +15705277413 Jane Doe (me)* (owner) | | Timestamp: 8/25/2017 08:54(UTC-4) | Direction: Outgoing Body: Up* Status: Sent Message Type: SMS Folder: Sent | Yes |
| 81 | Native Messages | +15705277413 Jane Doe (me)* (owner) | | Timestamp: 8/25/2017 08:54(UTC-4) | Direction: Outgoing Body: I really fucked yo Status: Sent Message Type: SMS Folder: Sent | Yes |

16

Certainly, a reasonable interpretation of this clear and cogent[13] text exchange is she was expressing regret over something she did. Here, she is accepting responsibility for something she did. Nothing about this exchange suggests that she was harmed or threatened. Plaintiff deleted these messages and was unable to offer an explanation as to why she chose to do so. (Ex. F, 372:20-373:13) Because the Petzold Lab was only able to partially retrieve the text message, Defendants were again deprived of an opportunity to question the recipient of this text message regarding the context.

The content of well over 250 instant messages deleted from Plaintiff's cellphone could not be fully recovered by the Petzold Lab. (*See* Ex. Z at 01970-02118) John Doe 1 is left to speculate about what additional information is contained in those messages and what information other unidentifiable witnesses might have and what they might reveal. In a matter with serious, criminal allegations such as this, this Court should not countenance any efforts by an accuser to shape the narrative through the destruction of evidence.

    c. **No lesser sanction will avoid substantial unfairness or deter such conduct by others in the future.**

Jane Doe intentionally deleting her text messages before handing it over to police investigating a crime is the pinnacle of acting in bad faith. This was not a case of accidental or inadvertent deletion. The messages were not automatically overwritten like the video surveillance, but rather manually and intentionally deleted by Jane Doe. *Cf. Bistrian v. Levi*, 488 F. Supp. 3d 454, 475476 (opting for a lesser sanction when video surveillance was automatically overwritten). Only through the independent efforts of the Petzold Lab were the parties able to recover what Jane Doe had intentionally deleted. However, notwithstanding these efforts, authorities were unable to recover the entirety of *all* the deleted messages.

---

[13] Plaintiff even corrects a typo in this message.

Without the remaining deleted text messages, Defendants are severely prejudiced in defending themselves against Jane Doe's claims that they raped her. These text messages are central and critical because they are a primary source of contemporaneous evidence made only more important by Plaintiff's claim to have little to no memory of the incident.

The deletion of these text messages is comparable to that of the destruction of the personal property in *Capogrosso v. State Farm Ins. Co.*, 2010 WL 3404974 (D.N.J. Aug. 26, 2010), which was held to be sufficient to establish a bad faith claim. In *Capogrosso*, the District Court confirmed that plaintiff's bad faith claim hinged on the spoliated evidence and caused extreme prejudice to the defendant (holding "sanction other than dismissal would be insufficient to remedy the prejudice caused by plaintiff's intentional destruction of evidence.") *Id*. at *15.

## VI.  CONCLUSION

The law is clear, and the facts are undisputed as they relate to Plaintiff's spoliation of evidence. The sanction of dismissal is not only appropriate, but warranted and should be imposed by this Court.

                                                Respectfully submitted,

                                                FITZPATRICK LENTZ & BUBBA, P.C.

Date:  September 22, 2022          BY:  /s/*Maraleen D. Shields*
                                                Maraleen D. Shields
                                                Attorney I.D. 91080
                                                Two City Center
                                                645 West Hamilton Street – Suite 800
                                                Allentown, PA 18101-2197
                                                610-797-9000
                                                mshields@flblaw.com
                                                Attorneys for Defendant
                                                John Doe 1