IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | ) | No. 5:20-cv-0377-JMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MORAVIAN COLLEGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JANE DOE'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS FOR SPOLIATION OF EVIDENCE**

**I.  INTRODUCTION AND COUNTER STATEMENT OF FACT**

This case does, indeed, involve criminal allegations made by Plaintiff, Jane Doe that she was raped, without her consent, by the John Doe Defendants on August 25, 2017, on campus of Moravian College. The rape was videotaped and disseminated in violation of criminal laws. This matter will be addressed in the form of Motion in Limine due November 16, 2022, regarding the videotapes.

The John Doe Defendants have consistently maintained that the sexual encounter between them was consensual.

It is entirely non-relevant and likely non-admissible at trial that the Bethlehem Police Department, Northampton County District Attorney's Office, or any other law enforcement agencies failed to file criminal charges against any of the John Doe Defendants. As the Court is aware, criminal trials require a higher burden of proof than in a civil case arising out of the same circumstances. Neither the BPD, DA's Office or any law enforcement opinion as to whether a non-consensual rape occurred is not admissible, that determination in this matter is

for a jury.

Moravian College did investigate Plaintiff's allegation in a Title IX investigation in 2017. Plaintiff, who was transferring schools, decided not to proceed with the hearing. The Plaintiff has filed for Assault and Battery (Counts V, VII, IX) and Intentional Infliction of Emotional District (Counts VI, VIII, X). The only real issue in this case as it relates to the John Doe Defendants is whether or not the sexual encounter was or was not consensual.

In answer to paragraph 45 the relevant testimony of Detective Iannace as to why that information may or may not appear in the text bubble. In that same answer the Detective clearly stated that there were a variety of reasons as to why that information might not be in the bubble. In particular, a complete explanation as to why an iMessage may not be recoverable was provided by Detective Paul Iannace. See Exhibit KK, 88-89, wherein he states that there are numerous explanations provided as to how the message could not show up on someone's phone.

The vast majority of the 368 instant messages or texts complained of were texted on August 23, 2017 through August 24, 2017 at 6:12 p.m. (18:12, text extraction 59), Ex. Z - 01963. Therefore, when looking at Ex. Z the Court needs to be aware that any text complained of prior to this time occurred before the Plaintiff, Jane Doe even entered the football party where she met, for the first time in her life, John Doe 1 and John Doe 2. Therefore, even if the text messages are available they certainly would not have discussed these two individuals or anything having to do with the alleged rape, which occurred on August 25, 2017.

The remainder of the texts with empty bubbles on August 25, 2017, (in other words, no texts recorded) again fall into the category that Detective Iannace testified about, whereas there are a number of explanations for why the texts would not be recorded. A number of these texts

go to people such as her dad, a friend named, Skylar, and a number of girlfriends.

It is the burden of proof for one intending to use these texts to authenticate them with an expert. Plaintiff does not intend to use empty text bubbles in the instant matter, particularly where the authenticity of the information will lead to nothing more than speculation as to what the message was or may have been. To any extent these text messages identify the recipient, the Defendants had a right to depose Skylar, Jane Doe's father (who was deposed), about what that information was or could have been. Furthermore, at the time these deletions occurred (if indeed, they were deleted) there was no knowledge that a litigation would be begun in this matter attributable to Jane Doe.

Plaintiff incorporates herein by reference all of its answers to John Doe 1's "Undisputed" Facts.

## III. LEGAL STANDARD

### A. Legal Standard for Spoliation and Sanctions

Plaintiff, Jane Doe agrees with the statement concerning legal standard for Spoliation and Sanctions. For the convenience of the Court, Plaintiff has reprinted same herein:

> Spoliation occurs when evidence is in a party's control, said evidence is relevant to the claims or defenses in the case, the subject evidence has been suppressed or withheld, and the duty to preserve the evidence was reasonably foreseeable. Bull v. UPS, 665 F.3d 68, 73 (3d Cir. 2012). Federal Rule of Civil Procedure 37 (e) specifically addresses the failure to preserve electronically stored information.
>
> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

3

    (A) presume that the lost information was unfavorable to the party;

    (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

    (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).  Whether a court will issue sanctions and the severity of sanctions imposed depends on the weight of the following three factors:

1.   The degree of fault of the party who altered or destroyed the evidence;

2.   The degree of prejudice suffered by the opposing party; and

3.   Whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

GN Netcom, Inc. v. Plantronics, Inc., 930 F.3d 76, 82 (3d Cir. 2019) (citing Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).

  Moreover, the Court in Bull, supra relied upon Emerson v. Thiel College, 296 F.3d 184, (3d Cir. 2002), wherein the courts ordinarily balance different factors in determining whether spoliation should result in an involuntary dismissal with prejudice.  As the Court stated in Bull:

> Moreover, district courts ordinarily balance six factors in assessing the propriety of an involuntary dismissal with prejudice: "(1) the party's personal responsibility; (2) the prejudice to the adversary; (3) a history of dilatoriness; (4) willfulness or bad faith; (5) the availability of alternative sanctions; and (6) the merit of the claim or defense." Doe v. Megless, 654 F.3d 404, 411 (3d Cir. 2011) (citing Poulis, 747 F.2d at 868).
> Bull, supra at 80.

  The following of these six balancing factors must be analyzed by the Court in deciding this Motion.

## IV. ARGUMENT

### A. John Doe 1 is not entitled to dismissal due to Jane Doe's deletion of (disputed) texts.

#### a. There is a genuine issue of material fact that Jane Doe deleted three hundred sixty-eight (368) instant messages from her cellphone during the period between August 23 and August 27, 2017.

Plaintiff has stated the counter facts concerning the deletion of these texts. It is clear from those facts that Jane Doe denies that she specifically deleted certain texts. It is further clear from the testimony of Detective Paul Iannace that there are explicit reasons why the actual texts would not appear in any given bubble. All texts sent on August 23 and August 24, prior to attendance at the party are not even relevant to this matter. How could they be? Jane Doe had not yet even met or previously known John Doe 1, John Doe 2, and John Doe 3.

Furthermore, factually even if these messages were deleted, there is no proof that any of them with the exception of the screen shot issue were sent to any of the John Doe Defendants in this matter. Furthermore, based upon the testimony of Detective Paul Iannace, even where a text message is deleted, it appears that when the information of the phone number to which the text was sent, the individual to which it was sent was recovered from the memory. As to why the actual text do not appear in the bubble, Detective Iannace gives a number of reasons why that might occur. Therefore, even if these texts were deleted, which Plaintiff Jane Doe has consistently disputed, it appears that the text never made it in to the memory of the phone for all of the reasons that Detective Iannace set forth. See: Plaintiff Jane Doe Answer to ¶45 of the Defendant "Undisputed" Facts.

These reasons as testified to by Detective Paul Iannace are as simple as numerous background applications on the phone, the amount of phone memory in the phone, etc. As to

¶2 of this argument detailing what the Plaintiff recalls about such deletions, it is clear that she did not remember doing so, nor did she have any explanation of deleting same, if she did so.

As a last note, the Defendant John Doe 1 seemingly requires us to prove from a competent forensic expert as to how the information came to be deleted from the cellphone. Since Plaintiff is not offering these text messages into evidence and does not intend to do so at this period of time in the litigation, because Plaintiff Jane Doe is not the one proffering said evidence. It is up to the Defendant John Doe 1 to proffer an expert as to the fact that the Plaintiff actually deleted these text message entries. The closest individual to an expert is Detective Paul Iannace who was in charge of the Petzold Crime Lab and he clearly was not able to testify to these allegations that the Defendant John Doe 1 is making.

> b. **<u>John Doe 1 has not been prejudiced by Jane Doe's deletion of text, if that actually occurred) since the vast majority of the text messages are not relevant to the consensual nature of the subject sexual encounter, her capacity to consent to same, her state of mind, and her credibility</u>**.

As pointed out above, it is apparent that the texts, which occurred on August 23 and August 24 before the actual assault, which occurred on August 25, 2017, could hardly have been relevant in any manner to the issue of consent. This is particularly true because the Plaintiff Jane Doe had not even been introduced, met or had any prior knowledge of the existence of John Doe 1, John Doe 2 or John Doe 3 on the face of the planet earth until she met John Doe 2 and John Doe 3 during the so called football party. In addition, the vast majority of the text messages after August 25 and August 26, 2017, are not texted to any of the John Doe Defendants, but indeed appear to be, if one looks at the text chain, communications friends and family.

As to the text, claimed deleted, sent at 2:21 a.m., on the night of the alleged assault, there is no testimony in this matter that it went to any of the John Doe Defendants. It is assumed that

if it went to John Doe 3, he would have testified about same.

All interpretations of the text on page 12 through 16 are all interpretations by Defense Counsel and are characterized by words such as "strongly suggest" etc. The interpretation of the texts (i.e. implications) are for the jury, and in terms of this Motion irrelevant. The texts are there and not the subject of spoliation.

## VI. CONCLUSION

With regard to the Poulis factors that apply herein, there has been no showing of prejudice to the adversary, a history of dilatoriness, intentional bad faith on the part of the Plaintiff, Jane Doe. There also has been no request for any alternative sanctions, but only a request for dismissal of the matter, which is a most extreme sanction, and to be avoided at all cost even under the case Bull, supra, which Defendant John Doe 1 relies upon. Furthermore and lastly, the merits of the claim or defense have not been affected at all since the Defendant has the apparent ability to attempt to admit the text message of 12:23 a.m., and has evidence of the other text that was deleted wherein John Doe 3, threatens to sue the Plaintiff, Jane Doe. Despite claims of 300 plus texts these are really the only two at issue in this case.

There must be an intent to destroy evidence, and bad faith on the part of Jane Doe in the instant matter. This litigation had not even begun when the alleged deletions occurred. See: Brewer v. Quakerstate, 72 F.3d 326, 334 (3d Cir. 1995).

For all those reasons the Motion of Defendant John Doe 1 to dismiss for spoliation of evidence should be dismissed.

Respectfully submitted,

John R. Vivian, Jr., Esquire
I.D. #34459
831 Lehigh Street
Easton, PA 18042
(610) 258-6625

Adam D. Meshkov, Esquire
I.D. #94856
830 Lehigh Street
Easton, PA 18042
(610) 438-6300
*Attorneys for Plaintiff, Jane Doe*
