IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE,      Plaintiff, | : : : | |
| v. | : : | Civil No. 5:20-cv-00377-JMG |
| MORAVIAN COLLEGE, *et al.*,      Defendants. | : : : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                                        December 16, 2022

## I.  OVERVIEW

Plaintiff Jane Doe alleges that she was sexually assaulted by defendants John Doe 1, John Doe 2 and John Doe 3 (collectively referred to as "the John Doe defendants") while she was a student at Moravian College on August 25, 2017. Plaintiff's Amended Complaint accuses the John Doe defendants of assault, battery and intentional infliction of emotional distress. Plaintiff has also asserted claims against defendant Moravian College. Before the Court is Defendants John Doe 1 and John Doe 2's Motions for Summary Judgment. For the reasons that follow, the motions are denied in part and granted in part.

## II.  RELEVANT BACKGROUND AND ALLEGATIONS

### A.  Events of August 24, 2017 and August 25, 2017

In August of 2017, Plaintiff Jane Doe was a first year student at Moravian College and a member of its cheerleading team. Def. John Doe 1's Statement of Facts ¶ 2, ECF No. 98-3 [hereinafter "JD-1's SOF"]; Pl.'s Resp. to JD-1's Statement of Facts ¶ 2, ECF No. 106-1 [hereinafter "PR JD-1 SOF"]; Def. John Doe 2's Statement of Facts ¶ 6, ECF No. 97-2 [hereinafter

"JD-2's SOF"].[1]  On August 24, 2017, Plaintiff attended a dinner to celebrate the end of the cheerleading pre-season at "On the Border" restaurant in Bethlehem, PA.  JD-1's SOF ¶ 15 (P.3);[2] PR JD-1 SOF ¶ 15 (P.3); JD-2's SOF ¶¶ 15-16.  Plaintiff did not consume any alcohol at the dinner. JD-1's SOF ¶ 15 (P.3); PR JD-1 SOF ¶ 15 (P.3); JD-2's SOF ¶ 18.  Following the dinner, Plaintiff returned to her dormitory at Wilhelm Hall at 6:08PM.  JD-1's SOF ¶ 16 (P.3);[3] PR JD-1 SOF ¶ 16 (P.3).  After she returned from the dinner, Plaintiff and her roommate, M.B., walked to the home of her teammate M.C., which was known as the "Cheerleading House."  JD-1's SOF ¶ 17; PR JD-1 SOF ¶ 17; JD-2's SOF ¶ 20.  Plaintiff consumed several alcoholic beverages while she was at the Cheerleading House.  JD-1's SOF ¶ 18; PR JD-1 SOF ¶ 18; *see* JD-2's SOF ¶ 23.

At some point Plaintiff left the Cheerleading House to walk her roommate back to their dormitory.  JD-1's SOF ¶ 19 (P. 4); PR JD-1 SOF ¶ 19 (P. 3).  Plaintiff's key card was used to swipe into the building at 9:17PM.  JD-1's SOF ¶ 21; PR JD-1 SOF ¶ 21.  Plaintiff then left the dormitory and returned to the Cheerleading House with another teammate.  JD-1's SOF ¶ 22; PR JD-1 SOF ¶ 22; JD-2's SOF ¶ 26.  After they arrived, Plaintiff and several other cheerleaders left the Cheerleading House and went to a house located at 127 W. Laurel Street, which was known as the "Football House."  JD-1's SOF ¶ 22; PR JD-1 SOF ¶ 22; JD-2's SOF ¶ 27.

While she was at the Football House, Plaintiff met defendant John Doe 3 and began having a conversation with him.  JD-1's SOF ¶ 24; PR JD-1 SOF ¶ 24; JD-2's SOF ¶ 38.  At the time John Doe 3 was a student at Bloomsburg University and was visiting Moravian College that evening.

---

[1] Plaintiff did not include an itemized response to defendant John Doe 2's Statement of Facts in her response to his Motion for Summary Judgment.
[2] Defendant John Doe 1's SOF begins with paragraphs numbered 1-19, and then restarts the numbering of paragraphs at number 13 on p. 3 of the SOF under the heading "II. Events of August 23-25, 2017."  Plaintiff's response follows the same numbering.
[3] The facts cited from paragraphs 16-18 of John Doe 1's SOF are located on page 3 of John Doe 1's SOF under the heading listed above in n. 2.

JD-1's SOF ¶ 15 (P. 2); PR JD-1 SOF ¶ 15 (P. 2); JD-2's SOF ¶ 5.  Plaintiff later met defendant John Doe 2 inside the same house. JD-1's SOF ¶ 26; PR JD-1 SOF ¶ 26; JD-2's SOF ¶ 42.  John Doe 2 was a sophomore at Moravian College at the time.  JD-1's SOF ¶ 13 (P. 2); PR JD-1 SOF ¶ 13 (P. 2); JD-2's SOF ¶ 4.  Plaintiff did not consume any alcohol while she was at the Football House.  JD-1's SOF ¶ 23; PR JD-1 SOF ¶ 23; JD-2's SOF ¶ 35. [4]  Members of the cheerleading team then began to leave the Football House, but Plaintiff opted to stay behind with defendants John Doe 2 and John Doe 3. JD-1's SOF ¶ 26; PR JD-1 SOF ¶ 26; JD-2's SOF ¶ 40.  Later, Plaintiff left the Football House with defendants John Doe 2 and John Doe 3.  JD-1's SOF ¶ 27; PR JD-1 SOF ¶ 27.

After leaving the Football House, Plaintiff, John Doe 2 and John Doe 3 stopped to speak with a fellow student on the street near the Football House.  JD-1's SOF ¶ 28; PR JD-1 SOF ¶ 28; JD-2's SOF ¶ 48.  They then went to John Doe 1's residence, which was located at the August Spangenberg House F.  JD-1's SOF ¶ 29; PR JD-1 SOF ¶ 29.  Once they arrived, they had to wait for John Doe 1 to let them into the building.  JD-1's SOF ¶ 32; PR JD-1 SOF ¶ 32; JD-2's SOF ¶ 53.  John Doe 1 then arrived and swiped Plaintiff, John Doe 2 and John Doe 3 into the building at 12:55AM on August 25, 2017.  JD-1's SOF ¶ 33; PR JD-1 SOF ¶ 33.[5]  Once they entered the

---

[4] Plaintiff admits that she did not consume any alcohol while at the Football House on the evening of August 24, 2017.  PR JD-1 SOF ¶ 23.  In her response to defendant John Doe 2's Motion for Summary Judgment, Plaintiff claims that she was intoxicated while at the Football House, pointing to defendant John Doe 3's statement to Moravian investigators, wherein he stated that he "thought she was under the influence of alcohol but explained that she seemed to know what was going on…"  Pl.'s Resp. to JD-2's Statement of Facts at 3, ECF No. 105 [hereinafter "PR JD-2 SOF"].

[5] The parties have presented conflicting evidence regarding Plaintiff's first encounter with John Doe 1.  In his interview with Detective Miller, John Doe 1 stated that Plaintiff kissed him twice after he arrived to let them into the building.  Joint Appendix, ECF No. 102, Ex. M at JA01454.  In her deposition, Plaintiff denied kissing any of the John Doe defendants before going into John Doe 1's residence. Joint Appendix, ECF No. 102, Ex. E, Jane Doe Dep. Vol. 1 Tr. 146: 13-21.

3

building, Plaintiff used a bathroom[6] located on the second floor that was not connected to any bedroom. JD-1's SOF ¶ 35; PR JD-1 SOF ¶ 35. After using the second floor bathroom, she then entered a bedroom that was located just across the hallway. JD-1's SOF ¶ 36; PR JD-1 SOF ¶ 36; JD-2's SOF ¶ 56. A sexual encounter between Plaintiff and the John Doe defendants then took place in the bedroom.[7] A portion of the encounter was video-recorded on a cellphone. JD-1's SOF ¶ 54; PR JD-1 SOF ¶ 54; JD-2's SOF ¶ 64.

Plaintiff has described her memory of the sexual encounter as "splotchy" and has difficulty remembering the events.[8] JD-1's SOF ¶ 37; PR JD-1 SOF ¶ 37. Plaintiff has stated that she does not recall how she came to be in the bedroom with the John Doe defendants, whether she was ever threatened by the John Doe defendants, or if she ever attempted to leave the bedroom. JD-1's SOF ¶ 38-40; PR JD-1 SOF ¶ 38-40. After the sexual encounter, Plaintiff left John Doe 1's residence with John Doe 3, who then walked her back to her dormitory at Wilhelm Hall. JD-1's SOF ¶ 42; PR JD-1 SOF ¶ 42; JD-2's SOF ¶ 68. Plaintiff then entered her dormitory at 1:59AM. JD-1's SOF ¶ 44; PR JD-1 SOF ¶ 44.[9]

---

[6] Plaintiff has alleged that she began to feel sick and thought that she was going to vomit as she walked back towards her dormitory with John Doe 2 and John Doe 3. *Id.* at 142: 3-14. Plaintiff has also alleged that John Doe 3 offered her to use the bathroom in his friend's house because it was on the way. *Id.* John Doe 1 and John Doe 2 have not admitted these allegations.
[7] The parties have presented conflicting evidence regarding the specific details of the sexual encounter that took place on August 25, 2017. As these facts are clearly in dispute, it is not necessary to include these details in this memorandum.
[8] Plaintiff's level of intoxication at the time of the sexual encounter was heavily disputed in the parties' motions.
[9] Another area of dispute is with respect to text messages that were allegedly sent by the parties on August 25, 2017. It is alleged that defendant John Doe 3 received a text message from Plaintiff's cellphone at 2:23AM on August 25, 2017, which stated the following: "Make sure none of your friends talk. I don't want this shit to deal with my freshman year. So keep it to themselves. I don't feel well either, so I think I may pass out soon but make sure they don't shit to anyone." Joint Appendix, ECF No. 102, Ex. E at JA 00569. Plaintiff claims that the message cannot be authenticated at trial in part because the contents of the message do not appear in

B.     **Law Enforcement Investigation**

Later that day, Plaintiff reported a rape to the Bethlehem Police Department and provided a handwritten statement containing details of the encounter. JD-1's SOF ¶¶ 47-48; PR JD-1 SOF ¶¶ 47-48. On August 26, 2017, Detective Moses Miller of the Bethlehem Police Department interviewed Plaintiff. JD-1's SOF ¶ 49; PR JD-1 SOF ¶ 49. That same day Detective Miller interviewed John Doe 1 about the incident. JD-1's SOF ¶ 51; PR JD-1 SOF ¶ 51. John Doe 1 also provided a written statement and the video of the sexual encounter to Detective Miller. JD-1's SOF ¶¶ 53-54; PR JD-1 SOF ¶¶ 53-54. John Doe 2 was also interviewed by Detective Miller[10] on August 26, 2017, and then provided a written statement on August 28, 2017. JD-1's SOF ¶¶ 55-56; PR JD-1 SOF ¶¶ 55-56. On August 28, 2017, the cellphones belonging to Plaintiff, John Doe 1 and John Doe 2 were collected by the Bethlehem Police Department and sent to the Petzold Crime Lab for forensic testing[11]. JD-1's SOF ¶¶ 59-60; PR JD-1 SOF ¶¶ 59-60; JD-2's SOF ¶ 85. On August 29, 2017, Detective Miller met with Assistant District Attorney Tatum Wilson of

---

Plaintiff's cellphone nor were they recoverable when her phone was extracted. PR JD-1 SOF ¶ 45.

Plaintiff has alleged that defendants John Doe 1 and John Doe 2 exchanged messages in a group chat, which included the following: "We took her virginity"; Y'all really violated that girl"; "She was calling us Daddy"; "She was fingering herself, I never saw a girl do that"; "She was crying in the bathroom"; "So, we may have a case"; and "Yea, cuz [John Doe 1] punched her." Joint Appendix, ECF No. 102, Ex. AA at JA2206-16. Several of these messages appear to have been sent by defendant John Doe 2. *See id.* In an interview with Moravian College Title IX investigators, John Doe 1 challenged the veracity of the messages and stated that John Doe 2 was just "gassing" when he sent them. JD-1's SOF ¶ 85.

[10] In her Motion for Summary Judgment response, Plaintiff admitted that John Doe 1 and John Doe 2 were both interviewed by Detective Miller and that they each provided a written statement regarding the events that took place on August 25, 2017. However, Plaintiff has disputed the substance of their statements.

[11] Defendant John Doe 1 has alleged that Plaintiff deleted 368 instant messages prior to this extraction. JD-1's SOF ¶ 61. Plaintiff has denied that she deleted the messages from her phone prior to submitting it to the Bethlehem Police. Joint Appendix, ECF No. 102, Ex. E, Jane Doe Dep. Vol. 1 Tr. 29: 10-21.

5

the Northampton County District Attorney's Office to review video evidence, written statements and text messages regarding the sexual assault allegations. JD-1's SOF ¶ 66; PR JD-1 SOF ¶ 66. Upon review of this evidence, no criminal charges were filed against defendants John Doe 1, John Doe 2 or John Doe 3. JD-1's SOF ¶ 70; PR JD-1 SOF ¶ 70; JD-2's SOF ¶ 87.

### C.    Title IX Investigation

On August 26, 2017, Plaintiff was issued a "No Contact" Order by Moravian College. JD-1's SOF ¶ 71; PR JD-1 SOF ¶ 71. This order advised Plaintiff that she was not to have any contact with defendants and fellow Moravian College students John Doe 1 and John Doe 2. *Id.* Moravian College also issued "No Contact" Orders to defendants John Doe 1 and John Doe 2 advising that they were not to have any contact with Plaintiff. *Id.* Moravian College proceeded with its investigation into the matter, which included interviews with Plaintiff, all three of the John Doe defendants, and sixteen other witnesses. JD-1's SOF ¶¶ 88-104; PR JD-1 SOF ¶¶ 88-104; JD-2's SOF ¶ 90. Plaintiff was interviewed by Title IX investigators on three occasions: August 31, 2017, September 5, 2017 and September 25, 2017.[12] JD-1's SOF ¶ 72; PR JD-1 SOF ¶ 72; JD-2's SOF ¶ 92. Title IX investigators conducted interviews with defendant John Doe 1 on September 11, 2017 and September 25, 2017, *see* JD-1's SOF ¶ 85; PR JD-1 SOF ¶ 85, and with defendant John Doe 2 on September 15, 2017 and October 5, 2017. JD-1's SOF ¶ 86; PR JD-1 SOF ¶ 86; Joint Appendix, ECF No. 102, Ex. S at JA01701. Moravian College issued an investigation report on October 23, 2017. *See id.* at JA01693-01741. Prior to issuing the final report, Plaintiff was given the opportunity to review her statement and make any revisions. Joint Appendix, ECF No.

---

[12] Plaintiff admits that the interviews with the John Doe defendants and the other 16 witnesses were conducted by Title IX investigators and that the summaries provided in John Doe 1's Motion for Summary Judgment are accurate reproductions of the interview summaries. Plaintiff, however, disputes the accuracy and credibility of the witnesses.

6

102, Ex. Q at JA01686-89. Plaintiff made four revisions to her statement with respect to events that took place at the Football House and defendant John Doe 1's residence. *Id.* A hearing in this matter before the Discipline and Review Committee at Moravian College was scheduled for November 20, 2017. JD-1's SOF ¶ 109; PR JD-1 SOF ¶ 109. Prior to the date of the hearing, Plaintiff decided to withdraw her complaint. JD-1's SOF ¶ 110; PR JD-1 SOF ¶ 110; JD-2's SOF ¶ 111. Moravian College then sent a letter to Plaintiff on November 10, 2017 confirming Plaintiff's decision to withdraw her complaint. JD-1's SOF ¶ 110; PR JD-1 SOF ¶ 110; Joint Appendix, ECF No. 102, Ex. T at JA 01742.

D.    **"No Contact" Order**

On several occasions, Plaintiff raised concerns with Moravian College Title IX Coordinator Leah Naso (Breisch)[13] regarding the No Contact Order and near-interactions with defendants John Doe 1 and John Doe 2. On September 19, 2017, Plaintiff emailed Naso and stated that she had seen defendants John Doe 1 and John Doe 2 in a campus dining hall, at which time Plaintiff observed them staring at her and whispering to the person they were with. Joint Appendix, ECF No. 102, Ex. F., Jane Doe Dep. Vol. 2 Tr. 255-57. Naso responded to Plaintiff that same day and stated that while their conduct was likely not a violation of the No Contact Order, she would speak to John Doe 1 and John Doe 2 about the "need to be more mindful about how they may be impacting you during the course of this investigation." *Id.* at 258-59.

In an email to Moravian Title IX Coordinator Linda Hoy on October 17, 2017, Plaintiff stated that she saw defendant John Doe 1 walk towards her from a distance of approximately 50 feet as she was walking back to her dormitory one evening. Joint Appendix, ECF No. 102, Ex. F. at JA867. Plaintiff stated that she changed her direction when she saw him approaching. *See id.*

---

[13] Leah Breisch is now known as Leah Naso.

Hoy responded to Plaintiff that same day and informed her that the alleged incident involving defendant John Doe 1 was likely not a violation of the No Contact Order, and, that she had forwarded Plaintiff's email to Naso. *Id.* at JA868. Then, on February 8, 2018, an altercation took place at a Moravian College basketball game between Plaintiff, Plaintiff's father and defendant John Doe 1.[14] *See* Joint Appendix, ECF No. 102, Ex. F., Jane Doe Dep. Vol. 2 Tr. 286-99; Joint Appendix, ECF No. 102, Ex. G., John Doe 1 Dep. Tr. 991-95. Plaintiff was later issued a violation of the No Contact Order on February 22, 2018. Joint Appendix, ECF No. 102, Ex. V at 01752-53.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify [] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

---

[14] In their depositions, Plaintiff and defendant John Doe 1 both admitted that the altercation took place. *See* Joint Appendix, ECF No. 102, Ex. F., Jane Doe Dep. Vol. 2 Tr. 286-99; Joint Appendix, ECF No. 102, Ex. G., John Doe 1 Dep. Tr. 991-95. However, the specific facts offered by each party regarding the incident are in dispute. *See id.*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

## IV.     DISCUSSION

Defendants John Doe 1 and John 2 Doe move for summary judgment with respect to Plaintiff's claims of (1) assault and battery and (2) intentional infliction of emotional distress. Both defendants contend that they are entitled to summary judgment because the sexual encounter was consensual, and, because Plaintiff has not presented sufficient evidence to establish her claim of intentional infliction of emotional distress. The Court addresses these arguments in turn.

### A.     Plaintiff's Assault and Battery Claims

Under Pennsylvania law, an assault is defined as "an intentional attempt by force to do injury to the person of another, and a battery is committed whenever the violence menaced in the assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). To constitute an assault, a tortfeasor must have the intent to "place the individual in imminent apprehension of harmful or offensive contact" and the individual must have "actual imminent apprehension" of the harmful or offensive contact. *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 365-66 (E.D. Pa. 2006). A battery occurs when "a person acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and … a harmful contact with the person of the

9

other directly or indirectly results." *Sciotto v. Marple Newton Sch. Dist.*, 81 F. Supp. 2d 559, 577 (E.D. Pa. 1999) (quoting RESTATEMENT (SECOND) OF TORTS, § 13 (1965)).

Consent is a defense to the intentional torts of assault and battery in Pennsylvania. *Quinn v. Ltd. Exp., Inc.*, 715 F. Supp. 127, 130 (W.D. Pa. 1989) (citing W. Prosser, Law on Torts § 18 (4th ed. 1971)). "Consent may be manifested by an individual's words and/or affirmative actions which indicate a willingness for another's conduct to occur." *Id.* Evidence of consent may also be established when a party's perceived inaction indicates an "apparent or implied willingness" for the conduct to occur. *Barnes v. American Tobacco Co.*, 161 F.3d 127, 148 (3d Cir. 1998) (citing RESTATEMENT (SECOND) OF TORTS § 892 cmt. b & c).

From the outset of this litigation, the central issue has been whether the sexual encounter between Plaintiff and the John Doe defendants was consensual. John Doe 1 and John Doe 2 have argued that the entire sexual encounter was consensual. In their Motions for Summary Judgment, both John Doe 1 and John Doe 2 claimed that Plaintiff exhibited an "apparent willingness" to go to John Doe 1's residence with John Doe 2 and John Doe 3 and then have sexual intercourse with all three John Doe Defendants. *See Barnes v. American Tobacco Co.*, 161 F.3d at 148. Defendants John Doe 1 and John Doe 2 have argued, *inter alia*, that Plaintiff never said the word "no," she never tried to leave, and that she was unimpaired throughout the entire encounter. In an interview with Moravian Title IX investigators, John Doe 1 also claimed that Plaintiff consented to the video recording during the encounter so long as the video was not shared.

In her responses to the motions, Plaintiff alleges that she was sexually assaulted and points to several pieces of evidence to establish that the encounter was not consensual, including her lack of memory of the entire incident and the amount of alcohol she consumed at the party at the Cheeleading House. She has also alleged that one of the John Doe defendants held her head down

and pushed her head towards the pelvic area of another John Doe during the sexual encounter. Moreover, Plaintiff has denied consenting to any video recordings during the encounter. Based on the conflicting accounts of the events that took place on August 25, 2017, and the evidence presented by the parties at this stage, the Court finds that there is a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. Defendant John Doe 1 admits as much in his Motion for Summary Judgment. *See* Def. JD-1's Mot. for Summ. J., ECF No. 98-2 at 16 ("Plaintiff has termed the sexual encounter an 'assault' or 'sexual assault,' yet this is ultimately a question for the jury."). The Court agrees that this question should be answered by a jury. *See Celotex Corp.*, 477 U.S. at 323. Viewed in the light most favorable to the non-moving party, in this case the Plaintiff, a reasonable jury could return a verdict in her favor based on the evidence presented thus far. *See Physicians Healthsource, Inc.*, 954 F.3d at 618; *Daniels*, 776 F.3d at 192. Therefore, summary judgment is not appropriate at this time.

Defendant John Doe 1 has argued that he is entitled to summary judgment because Plaintiff's deposition testimony contradicted prior statements that she made to the police and Title IX investigators at Moravian College. John Doe 1 claims that this contrasting testimony forces a jury to rely on "utter supposition and conjecture." *See* Def. JD-1's Mot. for Summ. J., ECF No. 98-2 at 16. Summary judgment is improper when there is a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. This same rationale extends to witness credibility. *See Turner v. State Farm Fire & Cas. Co.*, 260 F. Supp. 3d 419, 424 (M.D. Pa. 2017) ("Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary."). Here, as discussed *supra*, there is a genuine dispute of material fact, conflicting evidence that must be weighed, and

witness credibility in issue. Therefore a trial is necessary on Plaintiff's claims of assault and battery, and summary judgment with respect to these claims will be denied.

### B.     Plaintiff's Intentional Infliction of Emotional Distress Claim

To state a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania law, the plaintiff must allege facts that establish that (1) the defendant's conduct was "extreme and outrageous," (2) it was "intentional or reckless," (3) it caused emotional distress, and (4) the emotional distress was severe. *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc); *see also Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) ("One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." (quoting RESTATEMENT (SECOND) OF TORTS § 46(1)). Conduct rises to the "extreme and outrageous" level if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. 1987)); *see also Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d); *Field v. Philadelphia Elec. Co.*, 388 Pa. Super. 400, 428 (1989). Finally, in order to prevail on a claim of IIED in Pennsylvania, the plaintiff must prove that she "[suffered] some type of resulting physical harm due to the defendant's outrageous conduct." *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (quoting *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)). Moreover, any claim of emotional distress must be supported by competent medical evidence. *Kazatsky*, 515 Pa. at 197.

In her Amended Complaint, Plaintiff's IIED claims against defendants John Doe 1 and John Doe 2 are based upon both the sexual encounter itself and actions alleged to have taken place following the sexual encounter. Third Amended Complaint ¶¶ 118-19, 132-33, ECF No. 49 ("Amended Complaint"). Plaintiff claims that as a result of the actions of defendants John Doe 1 and John Doe 2, Plaintiff suffered "shock and injury to her nerves and nervous system and other severe and serious injuries, all of which are or may be permanent in nature." *Id.* at ¶¶ 122, 135.

As discussed, *supra*, Plaintiff has has alleged that defendants John Doe 1 and John Doe 2 sexually assaulted her and then participated in the transmission of images of Plaintiff that were taken without her consent. Plaintiff has also alleged that defendants John Doe 1 and John Doe 2 violated the No Contact order issued by Moravian College on at least one occasion. Both of the parties have presented conflicting evidence, and after reviewing the evidence and the parties' motions for summary judgment, the Court has already found a material factual dispute with respect to the Plaintiff's assault and battery claims. Based on these allegations and the evidence presented before the Court at this stage with respect to Plaintiff's IIED claims against defendants John Doe 1 and John Doe 2, a jury could reasonably find that defendant John Doe 1 and John Doe 2's conduct before, during and after the sexual encounter was "beyond all possible bounds of decency" and "utterly intolerable," and that it intentionally or recklessly caused severe emotional distress. *See Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 320 (E.D. Pa. 2021) ("At the very least, this is a case where 'reasonable [people] may differ' and, as such, 'it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.'") (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (1965). Just like Plaintiff's assault and battery claims, the questions of whether the conduct of John Doe 1 and John Doe 2 was beyond all possible bounds of decency" and "utterly

intolerable," and if that conduct intentionally or recklessly caused severe emotional distress are questions that need to be answered by a jury. *See id.*

However, even if a jury could reasonably find that Plaintiff satisfied the first two elements of IIED, she would not be able to prove that she suffered physical harm as a result of the outrageous conduct based on the evidence presented at this stage. Under Pennsylvania law, a Plaintiff must be able to show that she suffered some type of physical harm as a result of the defendant's outrageous conduct in an IIED case. *See Reedy*, 615 F.3d at 231; *Hart v. O'Malley*, 436 Pa. Super. 151, 175 (1994), *aff'd*, 544 Pa. 315 (1996). In *Reedy*, the Third Circuit affirmed summary judgment in favor of the defendants, two police officers and a township public safety director, where the plaintiff was unable to point to any physical harm she suffered as a result of the defendants' conduct. In its opinion the Court stated:

> While one may argue whether [Defendant's] conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious," *Field,* 565 A.2d at 1184, we need not decide the issue, because, to succeed on an intentional infliction of emotional distress claim, [Plaintiff] must show that she suffered "some type of resulting physical harm due to the defendant's outrageous conduct." *Swisher,* 868 A.2d at 1230.

*Reedy*, 615 F.3d at 231. Furthermore, a plaintiff alleging IIED is required to present competent medical evidence regarding the physical harm suffered. *Kazatsky*, 515 Pa. at 197 ("We therefore conclude that if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence.").

Here, Plaintiff has alleged that she has suffered trauma and emotional distress as a result of the alleged actions of defendants John Doe 1 and John Doe 2. In her deposition, she stated that she has experienced flashbacks and nightmares which she attributes to the alleged sexual assault. Joint Appendix, ECF No. 102, Ex. F., Jane Doe Dep. Vol. 2 Tr. 206-07. Plaintiff stated that

following the incident she sought treatment by meeting with a counselor at the Crime Victim's Alliance from August 2017 through the summer of 2018, *see id.* at 204-05, and then began treatment with mental health counselor Haley Smith in December 2021. *Id.* at 202-03. But Plaintiff has not produced any records from the Crime Victim's Alliance or Haley Smith.[15]

The Court takes very seriously the trauma and emotional distress claimed by Plaintiff, however, the evidence in the record does not satisfy the physical harm requirement of an IIED claim under Pennsylvania law. Moreover, Plaintiff has not presented any competent medical evidence as is necessary to establish the alleged injuries that are attributed to the actions of defendants John Doe 1 and John Doe 2. Therefore, because Plaintiff cannot establish that she experienced physical harm as a result of defendant John Doe 1 and John Doe 2's alleged actions, and has produced no competent medical evidence, defendants John Doe 1 and John Doe 2 are entitled to summary judgment with respect to Plaintiff's IIED claims against them.

## V. CONCLUSION

For the reasons set out in this memorandum, summary judgment is denied in part and granted in part. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[15] In their Motions for Summary Judgment, Defendants John Doe 1 and John Doe 2 claimed that Plaintiff has not suffered any physical injury as a result of their alleged conduct, and, she has not presented any competent medical evidence to establish such injury. In her responses to their motions, Plaintiff did not challenge these specific claims.